THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE POSTAL TELEGRAPH CABLE COMPANY, Relator, *v.* FRANK CAMPBELL, as Comptroller of the State of New York, Respondent.

*Corporation tax — revision of the Comptroller's decision — constitutionality of the tax — no real estate deduction.*

Since chapter 542 of the Laws of 1880 has been amended by the acts, chapter 501 of 1885 and chapter 463 of 1889, the Comptroller of the State is required under section 20 of the first-mentioned act to include in his return to a writ of certiorari the accounts and all the evidence submitted to him; but the decision of the Comptroller as to an assessment and taxation under that act will not be disturbed unless it is clearly shown to be erroneous. Hence, a party seeking a revision or readjustment of a tax settled by the Comptroller under section 19 of that act must produce evidence showing the error of such settlement.

The provisions of chapter 542 of the Laws of 1880 and of the acts amendatory thereof and supplemental thereto, are not in conflict with either the State or Federal Constitutions; nor is the act of the Comptroller in imposing the tax prohibited by the enactments relating to interstate commerce.

The Comptroller in estimating under the provisions of that act the amount of capital stock employed by a corporation within the State, is not obliged to deduct real estate subject to local taxation, although an assessment under this act may result in an unequal or double taxation.

CERTIORARI issued out of the Supreme Court and attested March 29, 1892, directed to Frank Campbell, Comptroller of the State of New York, commanding him to certify and return to this court all and singular the reports, proceedings, decisions and actions, documents, records, evidence, accounts and papers before him, touching or concerning the valuations, assessment and taxation of capital employed and used by the relator within the state of New York, and his valuation and assessment for taxation for the year ending November 1, 1891, of the capital of the relator employed in the State of New York, etc.

*R. S. Guernsey,* for the relator.

508 PEOPLE ex rel. POSTAL TEL. CO. *v.* CAMPBELL.

THIRD DEPARTMENT, JULY TERM, 1893. [Vol. 70.

*S. W. Rosendale, Attorney-General,* and *John W. Hogan, Deputy Attorney-General,* for the respondent.

PUTNAM, J.:

We are called upon in this case to review the action of the Comptroller in declining to revise the tax settled against relator, under the provisions of chapter 542, Laws of 1880, and acts amendatory thereof and supplemental thereto.

The relator suggests that since the amendatory acts of 1885 and 1889, under section 20, the Comptroller is required to return to a certiorari the accounts and all the evidence submitted to him, and his decision, if found to be erroneous in fact or law, must be corrected by this court. This position is well taken ; but it is held that the decision of the Comptroller as to assessments and taxation unless *clearly shown* to be erroneous will not be disturbed. (*People ex rel. A. C. & D. Co.* v. *Wemple,* 129 N. Y. 558; *People ex rel. Osgood et al.* v. *Commissioner,* 99 id. 154.) Hence a party who seeks a revision or readjustment of a tax settled by the Comptroller, under section 19 of the act, *must produce evidence showing* the error of such settlement.

Therefore, the question for our consideration is whether the evidence, accounts and papers submitted to the Comptroller, *on the motion for a revision,* which he was obliged under section 20 of the act to return to the certiorari, shows an error in his original determination as to the amount of the capital stock of relator employed within the State.

The relator in its return estimated the amount of its capital stock employed within the State at $153,500. The Comptroller, however, settled it at $419,965, on which the tax was $629.98.

The relator made the following report :

> "*Capital employed within the State.*
>
> "Amount thereof in real estate (poles and wires)... $175,000.00
> "Value of shares of stock..................,....... 30 per cent.
> "Dividends on stock............................ None.
> "Average monthly bank balance................. $14,714.51
> "Amount paid for rent within the State........... $52,997.77
> "Amount paid for salaries, expenses, etc., within the
> State ...................................... $327,254.76."

It also appears that the amount of its capital stock was $10,000,000, divided into 100,000 shares of $100 each, and that 86,000 shares worth thirty dollars per share, had, on November 1, 1890, been issued. The total wire and pole mileage in the United States in November, 1890, was 79,489, of which 7,378, or nearly one-tenth, was in the State of New York. The company held stock in subsidiary telegraph companies, the par value of which is $5,649,020.

The questions involved have been so often passed upon and are so well settled, that an extended discussion will not be required.

It is settled that the provisions of chapter 542, Laws of 1880, and of the acts amendatory thereof and supplemental thereto, are not in conflict with either the State or Federal Constitutions. (*People* v. *The Home Ins. Co.*, 92 N. Y. 328; *The Home Ins. Co.* v. *New York*, 134 U. S. 594; *People* v. *The Gold & Stock Tel. Co.*, 98 N. Y. 67; *People* v. *Horn Silver Mining Co.*, 105 id. 76.) And this is the case although an assessment under the act may result in an unequal or double taxation. (*People* v. *The Home Ins. Co.*, *supra*; *People ex rel. Penn. R. R. Co.* v. *Wemple*, 51 N. Y. St. Repr. 702–704.)

The opinion in the case last cited, after referring with approval to the doctrine stated in *People* v. *The Home Ins. Co.* (*supra*), contains the following language: "The tax when imposed on a domestic corporation, is a tax on its corporate franchises; when imposed on a foreign corporation is a tax on its business; a distinction based on the fact that corporate franchises are only taxable within the jurisdiction which creates them, and where alone they can be said to have a situs."

Hence if a portion of the capital stock of relator employed within the State was real property subject to local taxation, the Comptroller, in estimating under the provisions of the act of 1880 the amount of relator's capital stock employed within the State, was not compelled to deduct therefrom the real estate so locally taxed. In *People* v. *The Home Ins. Co.* (*supra*), a portion of the capital of the company was invested in bonds of the United States not taxable — but it was held that such bonds could be properly considered in determining the amount of capital stock of the company. So, in the case under consideration, the Comptroller could, to determine the amount of the relator's property employed in the State, take into consideration its real estate though subject to local taxation.

The act of the Comptroller in imposing the tax in question was

not prohibited by the enactments as interstate commerce. The case of *The People ex rel. The Penn. R. R. Co.* v. *Wemple* (51 N. Y. St. Repr. 702), referred to by the relator, does not apply. In that case, the relator, a railroad company, whose lines extended over Pennsylvania, New Jersey and other localities, had no property in this State except that used solely for interstate commerce. It carried on no business within the State except that of interstate commerce. If, besides landing its passengers and freight in New York city, that railroad had extended its lines into the State of New York, or elsewhere, the case would have been more like the one under consideration. In the opinion in the case cited, the following language occurs: " There would seem to be no question that domestic corporations, engaged in both State and interstate commerce, may lawfully be subjected by the State to a franchise tax, measured by its whole capital or business, or in any other way in the discretion of the Legislature, without taking notice of the part of its business arising from interstate commerce, providing no hostile discrimination is made against such part. Nor would there seem to be any valid reason why a foreign corporation, engaged both in the business of State and interstate transportation in this State, should not be subject to a taxation in common with domestic corporations."

Therefore, the Comptroller could properly impose the tax in question upon relator, although it was engaged in both State and interstate commerce.

The act of the Comptroller in imposing the tax in question on relator, not being prohibited by the State or Federal Constitutions, the only question remaining to be considered, is whether there was error in determining the amount of capital employed by relator within the State.

The learned counsel for relator contends that the Comptroller erred in considering the amount of relator's average monthly bank balances, the gross amount paid for salaries, wages, labor, etc., and the total amount paid for rent. He suggests that this plan was first adopted and erroneously approved by this court in *People ex rel. A. C. & D. Co.* v. *Wemple* (60 Hun, 225). But the determination of this court in the case cited, was sustained by the Court of Appeals (129 N. Y. 558, 565, 566). It is, therefore, unnecessary to consider the argument of the learned counsel in support of his said con-

tention. (See, also, *People ex rel. S. C. O. Co.* v. *Wemple*, 131 N. Y. 68.)

The authorities last above cited hold that the amount of capital that any corporation employs within the State is generally a question of fact to be determined by the Comptroller. Also, as above suggested, that the determination of the Comptroller will not be disturbed, unless clearly shown to be erroneous. As we have seen, it was for the relator, on its motion for a revision, to produce evidence showing that the Comptroller erred in determining the amount of its capital stock employed in the State to be $419,965. After a careful examination of the papers, we are unable to hold that the relator succeeded in showing any such error.

.It does not appear by what method of computation the sum of $419,965 was settled upon as the amount of relator's capital stock used within the State. But it was shown that 86,000 shares of its stock had been issued, worth thirty dollars per share ; that the wire and pole mileage of the company in this State was 7,378 miles ; amount invested in poles and wire in the State, $175,000 ; its monthly bank balance, $14,714.51 ; amount paid for rent, $52,997.77 ; for salaries, expenses, $327,254.76. The company also holds stocks in subsidiary telegraph companies of the par value of $5,649,070. The relator was a New York corporation with its principal place of business in that State. From that place of business its operations were conducted. The Comptroller had all these facts before him in determining upon $419,965 as the amount of relator's capital stock employed in the State. We are unable to say that on the application for a revision *it was made to appear* that the Comptroller erred in his conclusions on the question submitted to him. The Comptroller having the facts above set out before him, as held in *People ex rel. A. C. & D. Co.* v. *Wemple* (129 N. Y. 566), there was sufficient evidence upon which he could act in finding a basis for assessment.

On the application for revision the burden was on the relator to show the Comptroller's error, if any. We think it failed to do so, and hence that the decision of the Comptroller should be confirmed, with costs.

MAYHAM, P. J., and HERRICK, J., concurred.

Decision of Comptroller affirmed, with costs.