PEOPLE ex rel. SINGER MFG. CO. *v.* WEMPLE. 63

Hun.]    THIRD DEPARTMENT, MAY TERM, 1894.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SINGER MAN-
UFACTURING COMPANY, Relator, *v.* EDWARD WEMPLE, Comptroller
of the State of New York, Respondent.

*Chapter 542 of the Laws of 1880 — tax authorized thereby — basis thereof — " capital
stock" defined — manufacturing corporation — holding of real estate is no part of
its ordinary business.*

Under the provisions of chapter 542 of the Laws of 1880, and the acts amendatory
thereof, the Comptroller of the State of New York is not authorized to assess a
tax against the surplus moneys of a foreign corporation invested by it in real
estate in the State of New York. Such statute only authorizes the Comptroller
to levy a tax upon the capital stock of a foreign corporation employed in its
business within the State, and does not authorize his assessing such a corpora-
tion upon its surplus or undivided property within the State. (MAYHAM, P. J.,
dissenting.)

The term " capital stock," as used in chapter 542 of the Laws of 1880, and the acts
amendatory thereof, refers to the capital stock authorized by the charter of a
corporation and subscribed or raised by its stockholders, on which it pays
dividends, and which it is obliged to maintain intact, not the surplus or undi-
vided profits owned by it, however invested, which it can at any time turn
into money and divide among its stockholders.

When a foreign corporation, whose business is manufacturing and the selling of
its manufactured products, uses a portion of its surplus in the purchase of real
estate in the State of New York, and holds the same as an investment, not
using it in its business, such purchase and holding is not an employment of its
capital stock within the State, within the meaning of chapter 542 of the Laws
of 1880, and the acts amendatory thereof; the basis of the tax authorized by
such statutes is the amount or portion of the capital of such corporation in use
within the State in the transaction of its ordinary business. (Per HERRICK, J.)

The holding of real estate and the receiving of rentals therefrom is no part of the
ordinary business of a manufacturing corporation. (Per HERRICK, J.)

CERTIORARI issued out of the Supreme Court and attested the 9th
day of February, 1892, directed to Edward Wemple, Comptroller of
the State of New York, commanding him to certify and return his
proceedings and decision in relation to the assessment of a tax on
the property of The Singer Manufacturing Company.

*Julien T. Davies* and *Wm. A. Poste,* for the relator.

*T. E. Hancock, Attorney-General,* and *John W. Hogan,* for the
defendant.

**64** PEOPLE ex rel. SINGER MFG. CO. *v.* WEMPLE.

THIRD DEPARTMENT, MAY TERM, 1894.          [Vol. 78.

PUTNAM, J.:

There is no dispute between the parties as to the facts of this case. The relator is a foreign corporation with a paid-up capital of $10,000,000, on which for the year ending November 1, 1890, a dividend of twelve and a half per cent was declared. Of that capital during said year $372,397.10 was employed in this State in the business of the corporation. During the last six months of the same year relator invested $900,000 in real estate in the city of New York, which was purchased with its undivided profits or surplus. The comptroller, claiming that he was authorized so to do, under the provisions of chapter 542 of the Laws of 1880, as amended by chapter 361, Laws of 1881, chapter 151, Laws of 1882, chapter 359 and chapter 501, Laws of 1885, chapters 193 and 353, Laws of 1889, and chapter 522, Laws of 1890, assessed the tax authorized by said act upon the amount of capital stock employed by relator in this State as aforesaid, viz., $372,397.10, and also upon said surplus of $900,000 so invested in real estate.

The only question submitted is whether the comptroller was authorized to include in the assessment against relator said real estate so purchased by it with its surplus or undivided profits.

If he could legally make such assessment his authority must be found in the statutes above referred to.

Section 1 of the act of 1880, as amended by chapter 361 of 1881, provides as follows: "Hereafter it shall be the duty of the president or treasurer of every * * * corporation * * * liable to be taxed on its corporate franchise or business, as provided in section 3 of this act, to make a report in writing to the comptroller annually on or before the 15th day of November, stating specifically the amount of capital paid in, the date, amount and rate per centum of each and every dividend declared by their respective corporations * * * during the year ending with the first day of said month."

The section further provides that in any year when any such corporation shall fail to make a dividend, or make one less than six per cent on the par value of its capital stock, the officers of the corporation shall, between the first and fifteenth of November, forward to the Comptroller a certificate containing a statement of the cash value of the capital stock of said company at a sum not less than the average price said stock sold for during said year.

Section 3 of said act (Chap. 542 of 1880, as amended by chap. 522 of 1890) provides as follows: "Every corporation * * * now or hereafter incorporated, organized or formed under, by or pursuant to law in this State, or in any other State or country, and doing business in this State, except * * * shall be liable to and shall pay a tax as a tax upon its franchise or business into the the State treasury annually, to be computed as follows: If the dividend or dividends made or declared by such corporation * * * during any year ending with the first day of November amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one-quarter mill upon the capital stock for each one per centum of dividends so made or declared; or if no dividend be made or declared, or if the dividend or dividends made or declared do not amount to six per centum upon the par value of said capital stock, then the tax to be at the rate of one and one-half mills upon each dollar of the valuation of the said capital stock made in accordance with the provisions of the first section of this act."

Section 11 of chapter 542 of 1880, as amended by chapter 501 of 1885, provides as follows, viz.: "The amount of capital stock which shall be the basis for the tax under the provisions of section 3 of this act, in the case of every corporation * * * liable to taxation thereunder, shall be the amount of capital stock employed within this State. In making to the Comptroller the report in writing or certificate of estimate and appraisal of the capital stock of such corporation * * * provided for by the first section of this act, it shall be the duty of the president or treasurer thereof, as the case may be, to state specifically the amount of capital stock employed within this State of such corporation. * * * Whenever the Comptroller is dissatisfied with such report * * * of any corporation * * * whose capital is only partially employed within this State, he is authorized and empowered to ascertain, fix and determine the amount of capital employed within this State, and to settle and account for the taxes and penalties due the State thereon."

In my view, under the above provisions of the act of 1880 and the acts amendatory thereof, the action of the Comptroller in assum-

ing to assess the $900,000 surplus moneys invested by relator in real estate, was unauthorized. The statute only authorizes the Comptroller to levy a tax upon the *capital stock* of a corporation. It will be observed that by the provisions of section 11, above quoted, the basis of the tax against every corporation under the provisions of section 3 of the act shall be the amount of its *capital stock* employed within this State. Section 11 (*supra*) leaves in force the provisions of section 3 except in limiting the franchise tax, authorized by the act, to capital stock employed within the State. Section 3, above quoted, provides that if a dividend of six per cent or upwards is made by a corporation during any year ending November first, the tax shall be at the rate of one-fourth of a mill upon the *capital stock* of the corporation for each one per centum of dividend so made. If no dividend is made, or one less than six per cent on the par value of the capital stock of the corporation, then the tax is to be at the rate of one and one-half mills upon every dollar of the valuation of the said *capital stock* made in accordance with the provisions of the 1st section of the act. Section 1, as we have seen, provides for an appraisal of the value of the *capital stock* of the corporation at its actual cash value where no dividends have been declared, or a dividend less than six per cent.

The act in question, then, only provides for a tax against relator to be assessed upon its *capital stock*. It did not authorize the Comptroller to assess the corporation on its surplus or undivided profits. In *Williams* v. *The Western Union Tel. Co.* (93 N. Y. 162–188) Judge EARL discusses the meaning of the words " capital stock," as follows, viz.: " The ' capital stock ' in this section does not mean share stock, but it means the property of the corporation contributed by its stockholders, or otherwise obtained by it, to the extent required by its charter. While the term ' capital stock ' is frequently used in a loose and indefinite sense, in this section, and in legal phrase generally, it means that and no more. In *State* v. *Morristown Fire Association* (3 Zabr. 195) GREEN, Ch. J., said : ' The phrase ' capital stock ' is very generally, if not universally, used to designate the amount of capital to be contributed for the purposes of the corporation. The amount thus contributed constitutes the ' capital stock ' of the company.' In *Burrall* v. *Bushwick R. R. Co.* (75 N. Y. 211) FOLGER, J., defined ' capital stock ' as ' that

money or property which is put in a single corporate fund by those who, by subscription therefor, become members of a corporate body.' In *Barry* v. *Merchants' Exchange Co.* (1 Sandf. Ch. 280) Vice-Chancellor SANDFORD said: 'The capital stock of a corporation is like that of a co-partnership or joint-stock company, the amount which the partners or associates put in as their stake in the concern.' By loss or misfortune, or misconduct of the managing officers of a corporation, its capital stock may be reduced below the amount limited by its charter; but whatever property it has up to that limit must be regarded as its capital stock. When its property exceeds that limit then the excess is surplus. •Such surplus belongs to the corporation, and is a portion of its property, and in a general sense may be regarded as a portion of its capital, but in a strictly legal sense it is not a portion of its capital, and is always regarded as surplus profits." (See, also, *Barclay* v. *Culver*, 30 Hun, 1–5; *State Bank of Wisconsin* v. *City of Milwaukee*, 18 Wis. 281.)

As suggested above, the only authority which the Comptroller possessed to tax the relator was derived from the statutes above referred to and quoted, and those acts only authorize him to assess relator's capital stock, and not its undivided surplus. It is true that section 11 (*supra*) of the act, after providing that the basis of the tax against a corporation under the provisions of section 3 of the act in question, shall be the amount of capital stock employed within the State, and that the corporation in making its report to the Comptroller shall report the amount of capital stock so used in the State, uses the word "capital" twice in the section instead of "capital stock." But it will be observed that it only authorizes the assessment upon the *capital stock* of the corporation, and in sections 1 and 3 of the act the tax authorized is also to be assessed on *capital stock* of the corporation.

I cannot believe that it was the intention of those who framed the statutes in question to authorize an assessment by the Comptroller on the undivided profits or surplus of the corporations mentioned therein. If relator during the year in question had only paid a dividend of five per cent, the tax under section 3 of the act would have been one and one-half mills upon each dollar of the valuation of its capital stock made in accordance with the provisions of section 1 of the act. It seems to me that the language con-

68  PEOPLE ex rel. SINGER MFG. CO. v. WEMPLE.

THIRD DEPARTMENT, MAY TERM, 1894.            [Vol. 78.

tained in section 3 necessarily limited the tax to the capital stock, and precluded the idea of an assessment on the surplus. Under section 1 the valuation of the stock is to be its actual value in cash, and not less than the average price said stock sold for during the year. The surplus which the Comptroller taxed increased the value of the capital stock which under the act is assessed. If the position of the respondent can be sustained a corporation can be taxed on its surplus and on its stock, which is increased in value by such surplus.

To illustrate: A corporation has a capital stock of $1,000,000, and a surplus of equal amount, and makes a dividend of five per cent per annum, all its capital stock and surplus being employed within this State. In consequence of the large surplus the capital stock of the corporation is worth $2,000,000. The corporation then, according to the position taken by the Comptroller, must pay the franchise tax assessed on the surplus of $1,000,000, and also on the value of its capital stock, which is doubled in consequence of such surplus. The effect of such a procedure must necessarily be to compel the corporation to pay a double tax on its surplus.

In the case supposed the surplus or undivided profits, under the acts in question, are taxed by the assessment of the capital stock of the corporation at its market value. The surplus necessarily increases the value of the stock, and the Comptroller in assessing the increase in value taxes the surplus.

To continue our illustration: A corporation with a capital stock of $1,000,000, and a surplus of like amount, all employed in this State, during the year expiring November first, has made a dividend of twelve and one-half per cent on the par value of its capital stock. Now it is clear that the dividend is increased in amount, perhaps doubled, by the surplus, and hence the franchise tax assessed by the Comptroller under the provisions of section 3 (supra) is increased, perhaps doubled. Therefore, whether a corporation pays a dividend of six per cent or upwards, or not, the surplus is necessarily taxed by the Comptroller in assessing the franchise tax in question, because the surplus necessarily increases the income of the corporation, and hence the annual dividend, and also increases the market value of its capital stock.

I conclude that the capital stock referred to in the act of 1880,

PEOPLE ex rel. SINGER MFG. CO. v. WEMPLE. 69

Hun.]                    THIRD DEPARTMENT, MAY TERM, 1894.

and acts amendatory thereto, is capital stock authorized by the charter of the corporation, and subscribed or raised by its stockholders, on which it pays dividends, and which it is obliged to maintain intact, not the surplus or undivided profits owned by it, however invested, which it can at any time turn into money and divide among the stockholders. This surplus or undivided profits it is true until divided belongs to the corporation, increasing the value of the corporate stock, but it cannot be deemed capital stock which can be assessed for the franchise tax authorized by the acts above mentioned.

The views above stated render it unnecessary to consider the position taken by appellant that the surplus belonging to relator so assessed by the Comptroller was not employed in the State within the meaning of section 11 of the act of 1880 and acts amendatory thereto.

I think the determination of the Comptroller should be reversed, with the usual costs.

HERRICK, J.:

When a foreign corporation, whose business is manufacturing and the selling of its manufactured products, uses a portion of its surplus in the purchase of real estate, and holds the same as an investment, not using it in its business, I do not think that such purchase and holding is an employment of its capital stock within this State within the meaning of the statute.

"The basis of the tax is the amount or portion of its capital in use here in the transaction of its ordinary business." (*People ex rel. Southern C. O. Co.* v. *Wemple*, 131 N. Y. 64.)

The holding of real estate and the receiving of rentals therefrom is no part of the ordinary business of the corporation.

If the money so invested is not employed within this State then it is not the subject of taxation here. (*People* v. *American Bell Telephone Co.*, 117 N. Y. 241.)

The determination of the Comptroller was, therefore, erroneous, and should be reversed.

MAYHAM, P. J. (dissenting):

The relator being a foreign corporation doing business in this State, in its report to the Comptroller for the year ending on the 1st

of November, 1890, for the purpose of taxation, stated that the amount of capital stock employed in the State of New York was $372,397.10, on which it was liable under the Laws of 1880 and 1881 to a tax of $1,163.74.

The Comptroller, in addition to the sum reported, found that within the six months next preceding the 1st of November, 1890, the relator had employed within this State $900,000 capital, the tax on which would amount to the sum of $1,406.25, making the aggregate tax imposed by him $2,565.99. It seems conceded that this latter sum of $900,000 consisted of an investment by the relator in April of that year of about that amount in real estate in the city of New York which it then held under leases for the purpose of its business.

Notice of this assessment was given to the relator by the Comptroller, whereupon the relator applied for a rehearing, which was granted, and on such rehearing the Comptroller determined to readjust the tax, and affirmed the same, whereupon the relator sued out this writ of certiorari.

The principal question raised by the certiorari is whether the investment of this $900,000 of the surplus earnings of the relator is taxable under section 11 of chapter 542 of the Laws of 1880, as added by chapter 151 of Laws of 1882, and amended by chapter 501 of Laws of 1885.

That section reads as follows: "The amount of capital stock which shall be the basis for tax under the provisions of section 3 of this act, in the case of every corporation, joint-stock company and association liable to taxation thereunder, shall be the amount of capital stock employed within this State. In making to the Comptroller the report in writing, or certificate of estimate and appraisal of the capital stock of such corporation, joint-stock company or association provided for by the first section of this act, it shall be the duty of the president or treasurer thereof, as the case may be, to state specifically the amount of capital stock employed within this State of such corporation, joint-stock company or association.

"Whenever the Comptroller is dissatisfied with such report or certificate of estimate and appraisal, as the case may be, of any corporation, joint-stock company or association, whose capital is only partially employed within this State, he is authorized and empowered

to ascertain, fix and determine the amount of capital employed within this State, and to settle an account for the taxes and penalties due the State thereon."

Does this section authorize the Comptroller to impose this tax on the surplus capital of a foreign corporation doing business within this State when the same is invested in real estate which is not used by the corporation in its business, but solely as a place of investment of its surplus earnings?

The power of the Comptroller to impose a tax upon a foreign corporation doing business in the State is not questioned to the extent that its capital stock is employed in this State, but the learned counsel for the relator insists that there is a distinction between the term capital stock and capital represented by the surplus earnings of a corporation, and that as the surplus earnings of the relator were used in the purchase of this real estate, the corporation, by the use of the same in the purchase of property in this State, did not employ its capital stock within this State. A distinction is thus sought to be drawn between the capital stock of a corporation measured by the number of shares of the same at its par, or nominal value, and the additions or accretions to the par value of such shares measured by its surplus earnings, and that, therefore, the use or investment of its surplus earnings in this State in the purchase of real estate is not the use of any part of its capital stock in this State.

It can hardly be denied that until dividends of the surplus earnings of a corporation are declared and paid to the shareholders, such surplus belongs to the corporation and constitutes a part of its capital, and that its aggregate capital is represented by the shares of its capital stock.

It would seem to follow, therefore, that the capital of a corporation is the amount of its aggregated assets, whether it consists of the paid-up capital of each individual share of stock or the paid-up shares and the undivided accumulations of profits on the business.

If this reasoning be sound, then the sources from which the money is derived which was used by the corporation in this State for the purchase of this real estate is immaterial, as it would be the employment of the capital stock in this State, whether the funds were received from the par value of the original stock or from the net profits of its business. In either event it would be the lawful

employment of the company's capital stock in this State, and hence the subject of assessment and taxation.

The case of *The People ex rel. The American Contracting & Dredging Co.* v. *Wemple, Compt.* (decided by this court, and reported in 60 Hun, 225, and 38 N. Y. St. Repr. 17, which was affirmed in the Court of Appeals in 129 N. Y. 558), seems to be analogous in principle to the one under consideration. It is true that the relator in that case was a domestic corporation. But it became important in the decision of that case to consider what constituted the employment of capital in this State, and it was held that the balance of funds kept on deposit in a bank in this State, the amount of rent paid for premises occupied by the relator in this State, and the salaries paid to the officers of the corporation therein could properly be regarded by the Comptroller as capital employed in this State for the purpose of fixing the amount of tax to be imposed on the corporation.

The words "capital" and "capital stock" seem in section 11 of the act of 1885 to be used interchangeably. In that portion of the section imposing upon the president or other fiscal officer the duty of the corporation to make a report, the words "capital stock" are used ; and in the part of the section requiring the Comptroller to make the assessment the word "capital" is used.

For the purpose of this act, therefore, we think the words "capital stock" and "capital" were treated by the Legislature as equivalent or synonymous and employed in the same sense, and mean all the property of the corporation which it may properly use or invest in any business or pursuit in which it may lawfully use its capital or assets.

We are also of the opinion that the purchase by the relator of these pieces of real estate on which at the expiration of the existing leases thereon it intended to erect new buildings to be used in part as offices for the company and "for the office requirements of the company," as appears in folio 32 of the case, was such an employment of the capital of the relator in this State as to bring it within the jurisdiction of the assessing and taxing power of the Comptroller. It is true that the Court of Appeals in the case of *People ex rel. The Southern Cotton Oil Co.* v. *Wemple* (131 N. Y. 68) says: "The basis of the tax is the amount or portion of its capital in use here in the transaction of its ordinary business." In that case,

however, it appeared that a corporation of another State, engaged in a manufacturing business, maintained a sales agency in this State with a warehouse for its manufacturing, sold a portion of its manufactured products in the State, and kept large sums of money on deposit in the State, was doing business within the State within the meaning of this taxing act. The court, also, in that case says : " How much that (tax) may be in any particular case is generally a question of fact to be determined by the Comptroller under the procedure pointed out by the statute."

The court, also, in this case holds that when a corporation of another State employs any portion of its capital here, and thus has the benefit and protection afforded by the laws of this State to the extent of the capital employed, there is no reason why it should not be burdened by ·State tax to the same extent as a domestic corporation.

In the case of *The People* v. *American Bell Telephone Co.* (117 N. Y. 241), cited by the relator, the court held that it was not employing any of its capital in carrying on business in this State.

It was a Massachusetts corporation, created under the laws of that State, with its office in Boston, where it made all of its contracts with independent corporations in this State, such corporations paying all the rental or royalty growing out of the contractual relation to the corporation in Boston, so that none of its capital was used or employed in this State, and RUGER, J., says : " The Bell Telephone Company has no office or officer, agent or employee in the State of New York, unless the local corporations can be so denominated." He then proceeds to show that the local corporations bear no such relation. We do not think that case is an authority against the validity of the tax imposed in the case at bar.

Nor do we think that the contention of the relator, that the imposition of this tax upon the capital of the relator employed in the purchase of this real estate will subject the property of the relator to double taxation, can be considered, and taken as a ground for reversing the determination of the Comptroller in this case. The power of the Legislature to impose terms upon which foreign corporations may do business in this State is not disputed, and, under the authorities in this State and in the Federal courts, cannot well

be questioned, so long as they do not violate the Federal Constitution or law regulating inter-State commerce. The court cannot, therefore, relieve the relator from this tax on the equitable ground that it is a double taxation, so long as the use of its capital in this State makes it the subject of taxation by the Comptroller, under the provisions of section 11 of chapter 501 of the Laws of 1885.

We are, therefore, of the opinion that the assessment made by the Comptroller was correct, and should be confirmed.

Determination of the Comptroller reversed, with costs.