THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE AMERICAN AXE AND TOOL COMPANY, Relator, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Respondent.

<div style="float:right">82 313<br/>147a 609<br/>82 313<br/>11ap451</div>

*Meaning of "capital stock" as used in chapter 542 of 1880 — power and duties of the Comptroller in fixing and assessing the tax — not bound by the report of the officers of the corporation — evidence required on a review of his determination.*

The words "capital stock," as used in chapter 542 of the Laws of 1880, and the acts amendatory thereof, refer to the capital stock authorized by the charter of a corporation, and paid in or contributed by the stockholders thereof. It does not mean the "share" stock, but the property of the corporation contributed by its stockholders, or otherwise obtained by the corporation, to the extent required by its charter.

When a corporation files its report and appraisement, under the provisions of chapter 542 of the Laws of 1880, and the acts amendatory thereof, the Comptroller of the State of New York is not concluded by the valuation made by the officers of the corporation of its capital stock employed within the State. He may properly hold, in the absence of any satisfactory explanation, that the value of the capital stock of the corporation is equal to the sum paid into the treasury of the corporation, and may well doubt the truth of the report of the officers of the corporation in estimating that its stock had so shrunken in value as to be worth only one-quarter of its par value.

Where it is not suggested that a corporation possesses any surplus capital, the amount invested by it in the State of New York must necessarily be part of its capital stock, and the Comptroller of the State of New York, in assessing against such corporation a tax pursuant to chapter 542 of the Laws of 1880, is justified in doubting the reliability of the appraisement made by the officers of the corporation which makes its capital stock employed within the State less than the conceded value of its real estate therein.

314  PEOPLE ex rel. AM. AXE & TOOL CO. *v.* ROBERTS.

Third Department, December Term, 1894.     [Vol. 82.

The Comptroller is made by the statute an assessor, and he has the right to estimate the value of the stock of a corporation according to such information as he can obtain, or upon his own judgment; he is not bound by the report of the officers of such corporation as to such value, and his decision fixing the amount and value of the capital stock of a corporation employed within the State of New York will not be disturbed unless clearly shown to be erroneous, and it is for the corporation on an application for a rehearing to establish the fact that the conclusion of the Comptroller fixing the value of its property within the State was erroneous.

Upon such application for a rehearing the corporation should make an inventory of all the real and personal property and money, if any, owned by it within the State, and furnish satisfactory proof that it owned no property therein except as set out in the inventory ; whatever property, real or personal, it has within the State is presumptively a part of its capital stock, and liable to taxation.

CERTIORARI issued out of the Supreme Court and attested on the 26th day of June, 1894, directed to James A. Roberts, as Comptroller of the State of New York, commanding him to return to the office of the clerk of the county of Albany all his proceedings, decisions and actions, and all the accounts, evidence, documents, records and papers before him in relation to the determination and assessment of a tax upon the property of The American Axe and Tool Company, under the provisions of chapter 542 of the Laws of 1880, and the acts amendatory thereof.

*Frederick G. Dow*, for the relator.

*Theodore E. Hancock, Attorney-General*, and *John W. Hogan, Deputy Attorney-General*, for the respondent.

PUTNAM, J. :

The relator, a foreign corporation with an authorized capital stock of $5,000,000, of which $3,872,500 had been issued, on November 14, 1893, filed a report and appraisement with the Comptroller, under the provisions of chapter 542 of the Laws of 1880, and the several acts amendatory thereof, wherein it reported the amount of its capital stock employed in this State during the year in question at the sum of $1,284,058.34, and the value thereof, as appraised by the officers of the company, at the sum of twenty-five dollars per share, thus making the value of that portion of its capital employed in the State $321,014.58.

PEOPLE ex rel. AM. AXE & TOOL CO. *v.* ROBERTS.  315

Hun.]        Third Department, December Term, 1894.

The Comptroller was dissatisfied with the estimate and appraisal made by relator, and determined the amount of its capital employed in this State to be $1,284,058.34, upon which amount he decided relator was liable to pay a tax.

On the rehearing before the Comptroller, on the application of the relator, he refused to revise the tax determined as aforesaid.

It appears by the statement made and filed with the Comptroller on the 14th day of November, 1893, that 38,725 shares of the relator, of the par value of $100 per share, and on which $100 per share had been paid into the treasury of the company, had been issued. Hence, the amount of capital possessed by the corporation was $3,872,500, on which a dividend of one per cent had been paid on April 20, 1893. It also appeared that during the year in question none of the stock had been sold; that the capital stock employed in the State of New York was $1,284,058.34. Accompanying said report was an appraisement thereof, made by the treasurer and secretary of said company, wherein they estimated its value at twenty-five dollars per share.

In *People ex rel. Singer Mfg. Co.* v. *Wemple* (78 Hun, 63–66) we considered the meaning of the words " capital stock " as used in chapter 542 of the Laws of 1880, and acts amendatory thereof, and reached the conclusion that those words referred to the capital authorized by the charter of the company and paid in or contributed by the stockholders. For instance, in the case of relator, $3,872,500 has been paid in by the stockholders. That sum was the capital stock of the corporation, the company owning that fund for the purpose of carrying on its business. That stock was represented by a certain number of shares owned by the members of the corporation — the stockholders. We think our view of the meaning of the words " capital stock " is clearly sustained by the authorities cited in *People ex rel. Singer Mfg. Co.* v. *Wemple* (*supra*), at pages 66, 67. As said by Justice EARL, in *Williams* v. *The West. U. Tel. Co.* (93 N. Y. 162–188): " The ' capital stock ' in this section does not mean share stock, but it means *the property of the corporation*, contributed by its stockholders, or otherwise obtained by it, to the extent required by its charter."

When relator filed its report and appraisement on November 14, 1893, the Comptroller was not concluded by the valuation made by

its officers of its capital stock employed within the State. Section 11, chapter 151 of the Laws of 1882, as amended by chapter 501 of the Laws of 1885, provides that "whenever the Comptroller is dissatisfied with such report or certificate of estimate and appraisal, as the case may be, of any corporation, joint stock company or association whose capital is only partially employed within this State, he is authorized and empowered to ascertain, fix and determine the amount of capital employed within this State, and to settle an account for the taxes and penalties due the State thereon."

The relator claimed the amount of its capital stock employed within this State was $321,014.58. The Comptroller estimated it at $1,284,058.34.

We are unable to say that the Comptroller erred in this matter. The relator reported that $1,284,058.34 of said stock was employed in the State — doubtless meaning at the par value thereof — and the appraisal of its officers fixed the value of said stock at one-quarter of that sum. It thus appeared to the Comptroller from the statement and appraisement of relator filed in his office, on the one hand, that $1,284,058.34 of its capital stock was employed in the State, on account of which an equal sum had been paid into the treasury of the corporation. On the other hand was the appraisement of the secretary and treasurer, estimating said stock at one-quarter of the par value. There had been no sale of the stock. The Comptroller might properly hold, in the absence of any satisfactory explanation, that the value of the capital stock, the property of relator, *was equal to the sum paid into the treasury of the corporation.* On that assumption he could well doubt the truth of the report of the officers of relator in estimating that its stock had so shrunken as to be only worth one-quarter of its par value.

Again, by said report the value of relator's real estate in New York was placed at the sum of $446,000, while it is claimed the value of its capital stock in the State was only $321,014.58. As it was not suggested that relator possessed any surplus capital, the amount invested by it in the State of New York must necessarily be part of its capital stock. The Comptroller, therefore, was justified in doubting the reliability of the appraisement of the relator's officers, which made its capital stock employed in the State less than the conceded value of its real estate therein.

PEOPLE ex rel. AM. AXE & TOOL CO. *v.* ROBERTS.  317

Hun.]          THIRD DEPARTMENT, DECEMBER TERM, 1894.

We think, under the circumstances, under the report and appraisement filed, and in the absence of any explanation showing how $1,284,058.34 paid into the treasury of the corporation as capital stock could, in a short time, diminish in value to one-quarter of said sum, the Comptroller could properly determine that the value of the defendant's stock in the State was what· had been paid into the corporation therefor.

However that may be, we have seen that the above-quoted provision of the statute empowered the Comptroller to make an appraisal of the value of the capital stock of the corporation. He was not bound to follow the report of its officers. As held in *People ex rel. Roeblings Sons Co.* v. *Wemple* (138 N. Y. 582), "He is made by the statute an assessor himself, and he had a right to estimate its value according to such information as he could obtain or upon his own judgment." And it has been determined that a decision of the Comptroller in such a case, unless *clearly* shown to be erroneous, will not be disturbed. It was for the relator, on the application for a rehearing, to establish the fact that the conclusion of the Comptroller in fixing the value of its property within the State was erroneous. (*People ex rel. A. C. & D. Co.* v. *Wemple*, 129 N. Y. 558–565; *People ex rel. Postal Tel. Co.* v. *Campbell*, 70 Hun, 507.)

But the return of the Comptroller shows that on the application for a rehearing and revision, no evidence was produced showing that the tax levied and assessed by the Comptroller was illegally imposed, and we are unable to find any evidence in the papers showing error on the part of the Comptroller in the appraisement of the relator's property in this State produced on the application for revision. On that application, we infer, from the papers, that relator relied on the original report·and appraisement of November 14, 1893, as evidence of error in the conclusion reached by the Comptroller. For reasons above suggested, we do not think the Comptroller was bound by the estimate of the secretary and treasurer of the company. The statute made him an appraiser and his determination was conclusive unless *on application for revision it was shown to be erroneous.* Certainly such report and appraisement did not make it *clearly* appear, as held necessary in *People ex rel. A. C. & D. Co.* v. *Wemple* (*supra*), on an application for a revision, that the conclusion reached by the Comptroller was erroneous.

It is not doubtful what course should have been adopted by the relator on the application for a rehearing. It should have made an inventory of all the real and personal property and money, if any, owned by it within this State, and have offered satisfactory proof that it owned no property therein, except as set out in the inventory. Whatever property, real or personal, relator had within the State was presumptively a part of its capital stock and liable to taxation. The relator, on the motion for revision, seems to have failed to offer any evidence tending to show that the Comptroller had erred in his original appraisement. If there was any error on the part of the latter it was easily within the power of the relator to show it by proving just what property it had in the State.

We think the decision of the Comptroller should be affirmed, with costs.

MAYHAM, P. J., and HERRICK, J., concurred.

Writ of certiorari quashed, decision of Comptroller affirmed, with fifty dollars costs and disbursements.