THE PEOPLE OF THE STATE OF NEW YORK ex rel. STANDARD OIL COMPANY OF NEW YORK, Relator, *v.* MARTIN SAXE and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, September 25, 1917.

Tax — franchise tax on manufacturing corporation — Tax Law' section 183, construed — exemption from taxation where forty per cent of capital stock is used in manufacturing in this State — " capital stock " means property and assets — deduction of marketing expenses from total capital employed in State — when corporation not entitled to exemption.

The words " capital stock," as used in the last sentence of section 183 of the Tax Law, providing that manufacturing corporations shall not be exempt from the payment of the franchise tax prescribed by section 182 of the statute unless at least forty per centum of the " capital stock " of the corporation is invested in property in this State and used by it in its manufacturing business in this State, mean not the shares of stock, but refer to the property and assets of the corporation so invested and used.  Capital stock and capital are practically the equivalent of each other when considered as the basis of a franchise tax.

Hence, although the total investments of a corporation in this State may be forty per cent of its total assets, it is not entitled to the exemption granted by section 183 of the statute if, after deducting the moneys employed by it in marketing its goods, the balance of its property actually employed in manufacturing within the State is less than forty per cent of its total assets.

WOODWARD and COCHRANE, JJ., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 28th day of October, 1916, directed to Martin Saxe and others, as and constituting the State Tax Commission

of the State of New York, commanding them to certify and return to the clerk of the county of Albany all and singular their proceedings had in assessing a franchise tax against the relator.

Kenefick, Cooke, Mitchell & Bass [Martin Carey, Daniel J. Kenefick and Edward H. Letchworth of counsel], for the relator.

Merton E. Lewis, Attorney-General [Harold J. Hinman and Claude T. Dawes, Deputy Attorneys-General, of counsel], for the respondents.

LYON, J.:

The determination of this appeal depends upon the meaning to be given the term " capital stock " as used in the final sentence of section 183 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62).

The facts are practically conceded. The relator is a domestic corporation organized in 1882, under the Business Corporations Law, for the purpose of " refining petroleum and manufacturing and dealing in petroleum and the various products thereof, and the packages for same    *    *    *." It has an authorized capital stock of $75,000,000, all of which is issued and outstanding. During the year ending October 31, 1915, the relator maintained various manufacturing plants within the State and declared and paid dividends upon this capital stock amounting to eight per centum. In May, 1916, the State Tax Commission, holding that the relator did not have forty per centum of its capital stock employed in manufacturing within the State of New York, stated a tax against the relator, under section 182 of the Tax Law, of $60,000. Aggrieved at this decision, the relator has brought the determination of the Commission before this court for review.

The statements of the relator filed with the State Tax Commission, the correctness of which is not questioned, show that the total average gross assets of the relator during the year 1915, after allowing depreciation, were $104,348,794.75. Of this amount $41,797,650.13 was employed within the State, and $62,551,144.62 without the State. Of the amount so employed within the State, $3,710,991.95 represented the average amount employed in the marketing of goods, wares and merchandise manufactured by others than the relator.

Section 182 of the Tax Law provided so far as is necessary to be here considered: " Franchise tax on corporations. For the privilege of doing business or exercising its corporate franchises in this State every corporation, joint-stock company or association, doing business in this State, shall pay to the State Treasurer annually, in advance, an annual tax to be computed upon the basis of the amount of its capital stock, employed during the preceding year within this State, and upon each dollar of such amount. The measure of the amount of capital stock employed in this State shall be such a portion of the issued capital stock as the gross assets employed in any business within this State bear to the gross assets wherever employed in business. * * *." The last sentence above quoted, commonly known as the " rule of proportion," was incorporated in section 182 as well as in section 181 of the then existing Tax Law (Gen. Laws, chap. 24 [Laws of 1896, chap. 908], as amd.) by the amendment of 1906 (Chap. 474).

Section 183 of the Tax Law, so far as necessary to be considered, provided: " Certain corporations exempt from tax on capital stock. Banks * * * manufacturing corporations to the extent only of the capital actually employed in this State in manufacturing, and in the sale of the product of such manufacturing * * * shall be exempt from the payment of the taxes prescribed by section one hundred and eighty-two of this chapter. But such a * * * manufacturing * * * corporation shall not be exempted from the payment of such tax, unless at least forty per centum of the capital stock of such corporation is invested in property in this State and used by it in its * * * manufacturing * * * business in this State." The final sentence of this section was added by the Laws of 1901 (Chap. 558) and was incorporated without change in the Consolidated Tax Law of 1909.

The vital question to be determined upon the appeal, as at first suggested, is the meaning of the words " capital stock " as used in the final sentence of section 183. If, as relator contends, the words are to be construed as meaning share stock, that is, issued capital stock, then the franchise of the relator was not taxable, as the relator was required to have but forty per cent of $75,000,000, or $30,000,000; invested

in property in this State and used by it in its manufacturing business in order to be entitled to exemption, when concededly its moneys so invested and used were in excess of that sum. If, however, as respondents contend, the words " capital stock " are to be construed as meaning the property of the relator, that is, its gross assets, then it was necessary, in order that relator should be entitled to exemption, that it should have had so invested and used in this State fully $40,000,000, which concededly it had not.

It must be deemed settled that the words " capital stock " as used in section 182 of the Tax Law refer to the property of a corporation contributed by the stockholders, or otherwise obtained by it, and not the shares of stock. (*Williams* v. *Western Union Telegraph Co.,* 93 N. Y. 162, 188; *People ex rel. American Axe & Tool Co.* v. *Roberts,* 82 Hun, 313; affd., 147 N. Y. 699.) It is the actual not the par value of the capital stock of a corporation employed within this State which is the basis for computing the franchise tax. (*People ex rel. New York Central & H. R. R. R. Co.* v. *Knight,* 173 N. Y. 255.) The value of the capital stock is the value of the property of the corporation without regard to the amount of the capital stock. The term " capital stock " means not share stock, but the property of the corporation. Capital stock and capital are practically the equivalent of each other, when considered as a basis for a franchise tax. (*People ex rel. Commercial Cable Co.* v. *Morgan,* 178 N. Y. 433; *People ex rel. Tetragon Co.* v. *Sohmer,* 162 App. Div. 433; affd., 213 N. Y. 702; *People ex rel. Coney Island Jockey Club* v. *Sohmer,* 155 App. Div. 842; affd., 210 N. Y. 549.) It will be noticed that in section 182, where share stock clearly is meant, reference is made to it as " *issued* capital stock." As bearing upon the meaning to be given to the words " capital stock " in section 182, Judge Werner said in *People ex rel. Commercial Cable Co.* v. *Morgan* (*supra*): " The franchise is the thing taxed, and the tax is ' computed upon the basis of the amount of its capital stock employed within the State.' The share stock, or, in other words, the paper certificates held and owned by individuals are not *employed within this State*. It is the capital represented by such certificates that is so employed." These statements are alike applicable to the words " capital

stock " as used in section 183 in which the provision is that the corporation shall not be exempted from the payment of a franchise tax unless at least forty per centum of the capital stock of such corporation is *invested in property in this State* and *used* by it in its manufacturing business *in this State.* " It is an elementary canon of construction that statutes consisting of several parts relating to a common subject must be read as a whole and construed together. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight,* 173 N. Y. 255; *People ex rel. Killeen* v. *Angle,* 109 N. Y. 564; *People* v. *McGloin,* 91 N. Y. 241, 250; *Matter of N. Y. & B. Bridge,* 72 N. Y. 527, 529.)" (*People ex rel. Fifth Avenue Building Company* v. *Williams,* 198 N. Y. 238, 247.)

It is proper as an aid in determining whether a case is within the exemption, to give weight to the policy of the Legislature in adopting the exemption. (*People ex rel. Empire State Dairy Company* v. *Sohmer,* 218 N. Y. 199, 204.) Prior to enacting the final clause of section 183, manufacturing corporations were entitled to exemption from taxation to the extent of the capital stock actually employed in this State in manufacturing whether the percentage of capital stock thus employed was large or small. The clear purpose of requiring that at least forty per cent of the capital stock of a corporation should be invested in property in this State and used by the corporation in its manufacturing business in this State in order that the corporation might obtain exemption from the taxation of its franchise, was to encourage the investment of an additional proportion of its assets, and incidentally the employment of additional labor in this State. The injustice of basing the percentage upon the amount of issued capital stock is apparent as to two corporations, each having an issued capital stock of $50,000, one having assets to the extent of $200,000 employed in manufacturing, only one-tenth of which need be employed in this State in order to afford the corporation the exemption, while the other corporation, having total assets of only $19,000, all of which is employed in manufacturing in this State, must pay the tax. An exemption based upon the issued capital stock would be subject to manipulation as the caprices and interests of the persons interested might suggest. The only fair and satisfactory result, and the one

726    People ex rel. Standard Oil Co. *v.* Saxe.

Third Department, September, 1917.        [Vol. 179.

in harmony with the general plan of the Tax Law, can only be obtained by construing the words " capital stock " in the final clause to mean the property or assets of the corporation.

Construing the words " capital stock " to be the equivalent of assets or property, the State Tax Commission committed no error in denying the relator's application for exemption. While the amount of the relator's total investment in the State was practically forty per centum of its total assets, only the portion thereof invested in property in the State and used by it in its manufacturing business in the State could be considered in determining the percentage of the capital stock so invested and used. Hence, there was properly deducted from the relator's total investment in the State the sum of $3,710,991.95, representing the average amount employed by it in the marketing of goods, wares and merchandise manufactured by others than the relator, leaving the sum of $38,860,658.18 as the average net amount employed by it during the year in question in its own manufacturing business within the State. This sum being but about thirty-six and one-half per centum of the relator's total assets, the relator was properly denied the exemption claimed.

The computation of the tax was correct. Following the rule of proportion prescribed by section 182, the Commission, taking as the measure of the amount of capital stock employed in the State, such portion of the issued capital stock as the gross assets employed in the State bore to the total gross assets, wherever employed in business, reached as such measure the sum of $30,000,000. Computing the tax on this sum at the rate of one-quarter of a mill for each one per centum of dividends declared upon the par value of the capital stock during the year, fixed the amount of the relator's franchise tax at $60,000, which does not seem to be questioned as being the proper amount in case the relator is liable for the payment of a franchise tax.

The determination of the State Tax Commission should be affirmed, and writ dismissed, with fifty dollars costs and the disbursements of the appeal.

All concurred, except Woodward, J., who dissented, with opinion in which Cochrane, J., concurred.

WOODWARD, J. (dissenting):

The relator claims to be exempt from the tax imposed by the State Tax Commission under the provisions of section 182 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), by reason of the exemptions provided in section 183 of that act. The relator is a domestic corporation, created for the purpose of " Refining petroleum and manufacturing and dealing in petroleum and the various products thereof, and the packages for same; also acquiring, holding, etc., of the stocks, etc., of any corporation engaged in a similar business," as provided in its charter. In other words, it is a manufacturing corporation, with the incidental power of purchasing and holding the stocks of other corporations engaged in similar business. It concededly paid dividends of eight per centum during the year preceding the tax here under review, and it would be subject to the general language of section 182 of the Tax Law. This section provides that " For the privilege of doing business or exercising its corporate franchises in this State every corporation * * *, doing business in this State, shall pay to the State Treasurer annually, in advance, an annual tax to be computed upon the basis of the amount of its capital stock, employed during the preceding year within this State, and upon each dollar of such amount. The measure of the amount of capital stock employed in this State shall be such a portion of the issued capital stock as the gross assets employed in any business within this State bear to the gross assets wherever employed in business. For purposes of taxation, the capital of a corporation invested in the stock of another corporation shall be deemed to be assets located where the physical property represented by such stock is located. If the dividends upon the capital stock amount to six, or more than six per centum upon the par value of the capital stock, during any year ending with the thirty-first day of October, the tax shall be at the rate of one-quarter of a mill for each one per centum of dividends made or declared upon the par value of the capital stock during said year." The question is, does section 183 of the Tax Law give the relator an exemption?

Before entering upon this discussion, let us look a little further into the provisions of section 182. There can be no

question that the provisions of this section deal with the capital stock in the sense of the contribution in money or property to the common fund, as explained in *Williams* v. *Western Union Telegraph Co.* (93 N. Y. 162) and subsequent cases, for it distinctly provides that "the measure of the amount of capital stock employed in this State shall be such a portion of the *issued* capital stock as the gross assets employed in any business within this State bear to the gross assets wherever employed in business," and where the dividends upon the capital stock reach or exceed six per centum upon the " par value of the capital stock," the tax shall be "at the rate of one-quarter of a mill for each one per centum of dividends made or declared upon the par value of the capital stock." The tax is levied, not against property, but for the privilege of exercising the franchise, and it is based upon the capital stock of the corporation and its earning capacity. It is the amount of the dividends "upon the par value of the capital stock," which affords the basis of taxation for the use of the franchise, and the relator paid dividends aggregating eight per centum, so that if it is subject to the tax, there is no dispute that the amount involved is $60,000, as assessed. This tax is to be computed "upon the basis of the amount of its capital stock, employed during the preceding year within this State," and "the measure of the amount of capital stock employed in this State shall be such a portion of the issued capital stock as the gross assets employed in any business within this State bear to the gross assets wherever employed in business." This is, of course, a purely arbitrary rule for determining the amount of the capital stock employed in this State; it treats all of the assets of the corporation used in its business as capital, and makes the amount of the issued capital stock employed in the State to depend upon the proportion of the gross assets in their relation to such assets used within this State. That is, if a corporation of $75,000 capitalization made use of assets to the extent of $150,000, and $75,000 of this was employed within the State of New York, and the balance in some foreign jurisdiction, then the amount of the " issued capital stock " employed within this State would be one-half of the entire issued capital stock. This rule, made to govern the assessment of

taxes under the provisions of section 182 of the Tax Law, would not naturally and logically have anything to do with the scheme of exemption provided in section 183; it is merely designed to determine the amount of the issued capital stock of any given corporation which is employed within this State within the contemplation of this act, and, having served this purpose, it will not be judicially read into any other provisions of the act, where it is not clear that the Legislature intended such a result. It is merely an arbitrary and special rule for fixing the basis of taxation for the use of the corporate franchise, and cannot be understood as fixing a rule for any other condition, in the absence of clear legislative intent.

Coming, then, to section 183, this provides that certain banks, savings banks and other institutions, including " manufacturing corporations to the extent only of the capital actually employed in this State in manufacturing, and in the sale of the product of such manufacturing  *  *  *  shall be exempt from the payment of the taxes prescribed by section one hundred and eighty-two of this chapter." Here we find a radical change of language. While section 182 prescribes an arbitrary rule for determining the amount of capital stock employed within this State, section 183 exempts from this tax " manufacturing corporations to the extent only of the capital actually employed in this State in manufacturing, and in the sale of the product of such manufacturing." The " capital actually employed " is a very different thing from the " issued capital stock;" a corporation may, in the discretion of its board of directors, use all earnings as capital. It may " actually " employ not only the issued capital stock but all the earnings of such capital stock, and all the money it may be able to borrow upon its assets, and to the extent that it actually employs· such capital within the State of New York it is, subject to the further condition of the statute, entitled to exemption from the franchise tax. This is in harmony with " a wise public policy," which " should encourage manufacturers and so adjust taxation as to promote the investment of foreign capital within the State in manufacturing enterprises." (*People ex rel. Western Electric Co.* v. *Campbell,* 145 N. Y. 587, 591.) Capital actually employed in manufacturing within the State of New York is exempt from this franchise

730    People ex rel. Standard Oil Co. *v.* Saxe.

Tnird Department, September, 1917.        [Vol. 179.

tax, subject to the condition that " at least forty per centum of the capital stock of such corporation is invested in property in this State and used by it in its laundering, manufacturing or mining business in this State " (Tax Law, § 183), and no provision is made for determining arbitrarily what proportion of the capital stock is " invested in property in this State and used by it in its  *  *  *  manufacturing or mining business in this State." That cannot be determined by any set rule, such as is provided in section 182 for determining the amount of capital stock employed within this State, for while it might be said that the rule might apply as to the proportion of capital stock employed, it is hardly conceivable that the Legislature would enact such rule for determining whether it was " invested in property in this State and used by it in its laundering, manufacturing or mining business in this State." Clearly, there is no way of inducting the rule of determining the proportion of capital stock, as prescribed in section 182 of the Tax Law, into the provisions of section 183; one of these is a taxing act, the other deals with exemptions from that act, and it exempts manufacturing corporations only to the extent of the capital actually employed in this State, and limits such exemption to corporations which have invested " at least forty per centum of the capital stock " in property within this State, which is used by such corporation in its manufacturing business within this State. There must be a conjunction of the two conditions; there must be an investment of at least forty per centum of the capital stock — and the capital stock is the original corporate fund — and this forty per centum must be used by the corporation in its manufacturing business in this State. In the case now before us, the relator has a capital stock of $75,000,000, and forty per centum of that amount is $30,000,000; it is necessary, if it is to be relieved of the taxation imposed by the assessment here under review, that it should show that it has $30,000,000 invested in property in this State and that it uses this investment in conducting its manufacturing business within this State, and if it has done this, it is entitled, under the established policy of this State, to exemption from the tax imposed.

Has the relator established the necessary facts? The

presumption is, of course, in favor of the legality of the tax; it has been assessed in the regular course of business and has been paid, though under protest, and it is for the relator to establish that it is a manufacturing corporation, and that it has brought itself within the conditions of exemption. The record shows that it is a domestic corporation, organized and empowered to refine petroleum and to manufacture and deal in petroleum and the various products thereof, and the packages for the same, and to acquire, hold, etc., stocks of other corporations doing a similar business. It has a capitalization of $75,000,000, and if it has $30,000,000, or forty per cent of that amount, invested in property in the State of New York which it is using for the purposes of carrying on its manufacturing, it has established its right to relief. We have nothing to do with the question of its gross assets; the only question is in relation to its capital stock, as that is established by its charter, and the amount of that capital stock invested in property in this State and its use in the carrying on of the manufacturing business within this State. That is the only standard of exemption fixed by the statute and is the only one which should be considered. While the return before us, evidently made upon blanks furnished by the State, does not clearly bring out the exact amount of the capital stock invested within the State of New York and employed in manufacturing, we think it may be fairly inferred that more than forty per cent of the same is thus invested and used. Mr. Stein, treasurer of the relator, testified that the total amount employed in manufacturing within the State of New York, for the year in question, was $38,860,658.18, and of this amount it appears that $17,638,153.80 was invested in real estate, and $7,436,044.04 in personal property, while the average value of the stock in trade was $8,410,146.97. These three items aggregate more than forty per centum of the capital stock of the corporation, without taking into consideration the average amount carried in banks, bills and accounts receivable, and bonds and other obligations held, and there does not appear to be any doubt that the corporation is within the exemption provided by section 183 of the Tax Law. The defects in the returns are obviously due to the fact that the blanks furnished by the State demand facts and

figures having no relation to the questions involved in connection with the right to exemptions, and there is no reason why the relator should be held to the payment of this tax simply because the State officers have proceeded upon a wrong theory and have demanded the returns in such a form that they do not clearly disclose the actual amounts invested and used in manufacturing within this State. The testimony of the treasurer is absolutely undisputed that the corporation had invested in its manufacturing within the State of New York the sum of $38,860,658.18, and if this be true then more than forty per cent of the capital stock of the corporation was invested in property in the State of New York and used in its manufacturing business within the State, and under the established policy of the State the tax should be refunded.

The decision of the State Tax Commission should be reversed, and the claim of the relator to an exemption should be granted, with costs.

COCHRANE, J., concurred.

Determination confirmed and writ dismissed, with fifty dollars costs and disbursements.