## CENTRAL UNION TRUST CO. OF NEW YORK v. EDWARDS, Internal Revenue Collector.*

(Circuit Court of Appeals, Second Circuit.   January 8, 1923.)

No. 119.

**1. Statutes ⬅245—Statute given intended scope, if consonant with language, and not prohibited by Constitution.**

Since only the results of legislative action, and not the motives of the legislators, are fit subjects for judicial inquiry, any and every system of tax laying prescribed by competent authority must be given its intended scope, if by any reasonable interpretation of the words used that end can be reached, and no constitutional limitations are infringed.

**2. Statutes ⬅212—Phrase having definite legal meaning conclusively presumed to have been used with that meaning.**

If a phrase is regularly given, in legal formulæ, a fixed, definite, and certain meaning, that meaning is oftentimes conclusively presumed to be what Congress meant, and what the legislators, or most of them, intended to accomplish by the phrase is immaterial.

**3. Internal revenue ⬅9—"Capital stock" has no fixed meaning in tax statutes.**

The term "capital stock," in taxation nomenclature, has not been given a fixed definite meaning, as including only tangible assets shown by book values, but has frequently been given the meaning of including also the intangible property of a corporation, so that the context must be examined to determine the meaning of that phrase in Revenue Act 1916, § 407 (Comp. St. § 5980a), levying an excise tax on corporations measured by the fair value of their capital stock.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Stock.]

**4. Internal revenue ⬅9—"Fair value" of capital stock is equivalent to actual value; "actual value."**

Within Revenue Act 1916, § 407 (Comp. St. § 5980a), levying an excise tax on corporations measured by the fair value of their capital stock, the phrase "fair value" does not import guesswork, and, unless incompetence or worse be imputed to the assessor, is the exact equivalent of the phrase "actual value."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual Value; Fair Value.]

**5. Internal revenue ⬅9—Earnings and market value of shares considered in determining value of capital stock for excise tax.**

In view of the provisions in Revenue Act 1916, § 407 (Comp. St. § 5980a), levying an excise tax on corporations, to be measured by the fair value of their capital stock, which refer to estimating the capital stock and to arriving at a fair average value thereof for a year, and of the remarks of the chairman of the committee in charge of the bill before its enactment, the assessor of the tax is not limited to consideration of paid-in capital, surplus and undivided profits, but can consider earnings and market value of shares, and can levy a tax based on the market value of the shares, though that is nearly double the book value of the assets of the corporation.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Central Union Trust Company of New York against William H. Edwards, as Collector of Internal Revenue for the

Second District of New York. Judgment for defendant (282 Fed. 1008), and plaintiff brings error. Affirmed.

The United States assessed a tax against plaintiff pursuant to section 407 of the Revenue Act of 1916 (39 Stat. 756, 789, 790 [Comp. St. § 5980a]). The applicable language of that statute is as follows:

"Every corporation, joint-stock company or association, now or hereafter organized in the United States for profit and having a *capital stock represented by shares* * * * shall pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to fifty cents for each $1,000 *of the fair value of its capital stock,* and in estimating the value of capital stock the surplus and undivided profits shall be included. * * * The amount of such annual tax shall in all cases be computed on the basis of the *fair average value* of the capital stock for the preceding year."

The tax assessed was based upon undisputed facts, whereof we regard the following as crucial, viz. at date of return the par of plaintiff's capital stock was $5,000,000, its surplus $15,000,000, and its average undivided profits (in round numbers) $2,000,000; the par value of each share was $100, and the book value upwards of $400; for five years prior to return, dividends had annually been declared of never less than 50 per cent., and during the year preceding return the average market price of each share of stock sold was $788.75. Good will is not carried as an asset. A tax was admittedly due in an amount equal to 50 cents for each $1,000 of the aggregate of its outstanding capital stock, surplus and average undivided profits less the statutory deduction. In other words, the tangible book assets were offered as the basis for tax computation.

The Commissioner of Internal Revenue assessed a tax reached by using as basis for computation, what defendant calls the "fair value of total capital stock, i. e., 50,000 shares, at $575.97 per share." The additional tax resulting plaintiff paid under protest, and brought this action to recover. The trial court directed judgment for defendant; this writ followed.

Larkin, Rathbone & Perry, of New York City (Arthur H. Van Brunt, John M. Perry, and Twyman O. Abbott, all of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., and Richard S. Holmes, Sp. Asst. U. S. Atty., both of New York City (J. G. Korner, Jr., of Washington, D. C., of counsel), for defendant in error.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Admittedly the statute created an excise or privilege tax, not one directly laid *on* property. Admittedly, also, the tax is to be measured *by* property, and it states the philosophy or fundamentals of this difference between the treasury and the taxpayer, to inquire, Whose property? That of the trust company, or that of its shareholders? If one is to pay a tax measured by property, it assuredly seems more consonant with philosophical jurisprudence to measure the same by the property of the taxpayer, rather than by the possessions of another. But taxes are not philosophical products; they result from an assumed necessity, and their incidence is determined by probable ease of collection, politics, or partisanship, and other considerations of convenience or emotion.

[1] Since it is familiar law that only the results of legislative action, and not the motives of the legislators, are fit subjects for judi-

cial inquiry, it, follows that any and every system of taxlaying prescribed by competent authority must be given its intended scope, if by any reasonable interpretation of the words used that end can be reached, and no constitutional limitations are infringed. This reduces the present inquiry to the question whether Congress meant that, in measuring this excise tax, regard should be had only to what the corporation owned in its corporate capacity, and capable of admeasurement permitting entry on its books of account, i. e., its tangible assets, or whether there should be taken into consideration the public opinion, reflected by the open market, of what it was worth to share in the handling of those tangible assets, i. e., its good will, good management, and established capacity for earning profit.

But no subject can long be treated by Legislatures and courts without developing a technique, and converting words of frequent use, into formulæ; so that statutory interpretation is often, if not usually a search after the permitted meanings of certain words, commonly used, yet often used without any knowledge of the legal formulæ by which they may be surrounded. Thus the formal question at bar is, What did Congress mean by "the fair value of its capital stock," as applied to a company of which its shareholders think so highly that they regard each share as worth nearly twice what they would get for it on liquidation in accordance with honestly and intelligently kept books?

[2] If "capital stock" is a phrase regularly given in legal formulæ a fixed, definite, and certain meaning, that meaning is oftentimes conclusively presumed to be what Congress meant in the premises; and what the legislators, or most of them, intended to accomplish by the phrase, is immaterial.

[3] Accordingly this taxpayer urges that "capital stock," in taxation nomenclature, means nothing but "capital," i. e., tangible assets only, as shown by unimpeached books; and the reason for such meaning is that such assets are the property, and the sole property, of the corporation divorced from its right to transact business in its accustomed manner, viz. franchise and goodwill. That past generations of corporate taxation, and of contests over the same, have produced any general consensus of judicial or legislative opinion on this subject, we cannot think true.

There is certainly no authority limiting Congress to this meaning, while the states display the usual variety in opinion. To give illustrations, without exhausting search: New York has not departed from People v. Coleman, 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762, and holds that "capital stock" of a corporation signifies what is owned and held by the company in its corporate character; into which franchise, etc., do not enter, although those very items form "a very essential part of the shareholders' capital stock." See the same view in People v. Saxe, 179 App. Div. 721, 166 N. Y. Supp. 887, affirmed 222 N. Y. 545, 118 N. E. 1075. That property rather than excise taxes are considered in any given case is not material, if the search is for definitions, except as any definition is apt to be influenced by environment, and the definition of Finch, J., in the Coleman Case was approvingly quoted

in Home, etc., Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571; 51 L. Ed. 901.

This New York concept has perhaps been applied in this court under a statute (30 Stat. 448) laying a privilege tax "computed on the basis of the capital and surplus of the preceding fiscal year." Leather, etc., Bank v. Treat, 128 Fed. 262, 62 C. C. A. 644; Central, etc., Co. v. Treat (C. C.) 171 Fed. 301. And again under an act (38 Stat. 745, 751) laying an excise to be computed on the basis of the "capital, surplus and undivided profits," etc. Anderson v. Farmers', etc., Co., 241 Fed. 322. But in all these cases the statutory language was far more definite than in the present instance.

Minnesota, however, has said that capital stock may mean "all the corporate possessions and possibilities; [it] represents its business opportunities and capacities as well as its tangible assets." State v. Duluth, etc., Co., 76 Minn. 96, 103, 78 N. W. 1032, 57 L. R. A. 63.

Illinois thus attempts definition:

"Capital stock means * * * the beneficial ownership of every thing that enters into the property of the corporation [including, in the case of a railroad] the opportunities inherent in the corporation and its franchise, of creating earnings." Chicago, etc., Co. v. State Board (C. C.) 112 Fed. 607; and cf. Pacific, etc., Co. v. Lieb, 83 Ill. 602; State Board v. People, 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513.

In other words, within wide limits, capital stock means what the Legislature wants it to mean.

In Kentucky, the Supreme Court of the United States, found that the Legislature meant by capital stock "the entire property, real and personal, tangible and intangible, assets on hand, and [the company's] franchises as well," and expressed no objection to this concept of the phrase. Henderson, etc., Co. v. Kentucky, 166 U. S. 150, 17 Sup. Ct. 532, 41 L. Ed. 953, affirming 99 Ky. 623, 31 S. W. 486, 29 L. R. A. 73. That is to say, each state can define for itself; and the right of definition is primarily in the Legislature.

In Ohio, also, the Supreme Court found without objection that the state scheme regarded "capital stock" as representing, "not only the tangible property, but also the intangible, including therein all corporate franchises and all contracts, privileges and good will of the concern." Adams, etc., Co. v. Ohio, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965.

Wisconsin has perhaps stated the possibilities of the phrase most conveniently for the legislator, by declaring that "capital stock" may apply to one or another of three mental concepts: (1) The stockholders' shares; (2) the corporate property; (3) a mere measure of size of corporation as a test for graduating taxes. First National Bank v. Douglas County, 124 Wis. 15, 102 N. W. 315, 4 Ann. Cas. 34. The lack of fixity of meaning, the absence of any agreement in definition shown by the foregoing examples (which might be much extended), constrain to the belief that "capital stock" is a term plastic, to say the least, and compelling its interpreter to look first to the context for a meaning that has not been reduced to any rigid formula.

[4] We do not think that making the basis of computation "the

fair value" of capital stock advances the matter, and we are sure that whether one speaks of a tax *on* property or a tax measured *by* property, such variation in tax kind works per se no change in the meaning of the words "capital stock." "Fair" value does not import guesswork, and, unless incompetence or worse be imputed to the assessor, the phrase is the exact equivalent of the "actual value" of the Coleman Case.

[5] But when the statute speaks of "estimating" capital stock, and of arriving at the "fair *average* value" thereof for a year, the words are so inappropriate to the process of transcribing book values that an inference is irresistible of some other process being within the legislative intent. When one considers, further, that corporate excise taxes are not new with this act of Congress, observes that this form of words is a marked departure from previous acts (e. g., 38 Stat. 745, supra), and remembers that Congress acted in the absence of any rigid legal or judicial definition of "capital stock," the interpreter is compelled to have recourse to the annals of congressional action to find out what the Legislature meant and thought it said.

The remarks made by the "committee chairman in charge" of the bill (United States v. St. Paul, etc., Ry., 247 U. S. 310, 318, 38 Sup. Ct. 525, 62 L. Ed. 1130), are available in Cong. Rec. 64th Cong. 1st Sess. Sept. 7, 1916, and they satisfy us that the act was passed with the intent of permitting, and indeed compelling, the assessor to consider, not only paid-in capital, surplus and undivided profits, but earnings and market value of shares. Such a method of assessment necessarily implies for the words "capital stock" an enlarged meaning, which, if it does not connote the somewhat cynical view of the Wisconsin court, supra, certainly goes so far as to regard as "fair" an examination of "the entire potentiality of the corporation to profit by the exercise of its corporate franchise." First National Bank v. Moon, 102 Kan. 334, 343, 344, 170 Pac. 33, 37 (L. R. A. 1918C, 986).

If, as we find, the result reached by the assessor was and is consonant with such an examination and appraisement, the judgment below was right.

Affirmed, with costs.