First National Bank of the City of Superior, Appellant, vs. Douglas County, imp., Respondent.

*January 10—January 31, 1905.*

*Taxation: Double taxation: Exemptions: "Capital" of bank: Property purchased with capital: Voluntary payment: Purchase of void tax certificate through attorney: Return of money paid: Counties.*

1. Intent to impose taxation which is double even from an economic viewpoint is not to be ascribed to legislation in absence of clear and unambiguous expression.

2. The word "capital" as used in sec. 1, ch. 102, Laws of 1866 (Stats. 1898, p. 1527),—providing that no tax shall be imposed upon the capital of any bank or banking association,—means the money or property which the incorporators contribute and transfer to the corporation as capital, and which thus becomes its property; and the exemption includes the specific property purchased with money contributed as capital.

3. The burden is upon the bank to prove clearly the exempt character of the property, and to show an appropriation of the very capital to its purchase, not merely purchase out of the general funds made up of deposits, surplus, and capital commixed.

4. The fact that the assessors, in estimating the value of the shares of capital stock of a bank, did not include the value of certain real estate owned by it, and so fixed their value at less than the true value, does not preclude the bank from insisting that such real estate is exempt from taxation.

5. An agreement by an attorney of a bank to purchase at a tax sale, with his own money, real property of the bank which it claims is exempt, and to hold the certificate of sale subject to the future desire of the bank to acquire it in case it should be adjudged valid, is not fraudulent or illegal, nor does such a purchase amount to a voluntary payment of the tax by the bank which would preclude it from suing to have the certificate declared void.

6. The facts that an attorney for a bank borrowed from the bank on his note a sum sufficient to purchase a tax certificate on real property of the bank and requested another person to take and hold the certificate subject to his directions, and it was so purchased, do not show that the certificate was purchased by, or held in trust for, the bank.

7. If such tax certificate is adjudged void in an action by the bank against the county and the purchaser, the latter, by virtue of his legal title, has a right, as against the county, to a return of the money paid for the certificate.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

Plaintiff is a national banking association, located at the city of Superior. It owned a three-story brick building, the first floor of which was occupied for its banking offices and the other portions rented. Its capital stock, at par, was $200,000. In the year 1901 its capital stock was assessed to the owners thereof at Superior at a total of $100,000, and the real estate above described was assessed as the property of the plaintiff, tax levied thereon, and upon delinquency the property was sold at tax sale in May, 1902, and certificate issued in form to Mark Paine. This action was brought alleging the nontaxability of said real estate, and praying the cancellation of said tax certificate. Mark Paine notified the county, and tendered it the defense, which it assumed and became interpleaded to the action. It was claimed that the certificate was in fact purchased by the plaintiff, with its money, and that the certificate belonged to it; hence that, whether the property was taxable or not, the transaction constituted a voluntary payment thereof, and for that reason plaintiff could neither maintain action against Paine to quiet title nor against the county to recover back the amount paid at the sale therefor.

The court found that the real estate was purchased and the building theretofore commenced thereon was completed out of the capital of the plaintiff at a cost of about $49,000; that the plaintiff furnished the money and caused the property to be bid off and the certificate of sale made to Paine, who consented to receive it and has ever since held the same in his possession for the use and benefit of the plaintiff, subject to its control—all for the purpose of avoiding a voluntary pay-

ment or redemption from such tax. Whereupon it found, as conclusions of law, a valid assessment, and that, even if invalid, the purchase by the plaintiff of the tax certificate with full knowledge of all the facts amounted to a voluntary redemption; and that, though neither of the former positions were tenable, still the plaintiff was not entitled to the equitable relief prayed in the complaint, nor could it in this action recover from the county the amount paid for said certificate. Whereupon judgment dismissing the complaint was entered, from which the plaintiff appeals.

For the appellant there was a brief by *Luse, Powell, deForest & Luse,* and oral argument by *L. K. Luse.*

*C. H. Crownhart,* for the respondent.

DODGE, J. Congress having expressly consented that the states may, if they choose, tax the shares of stock in national banks, with certain limitations, and may also tax the real estate of the banking association (sec. 5219, R. S. of U. S. [U. S. Comp. St. 1901, p. 3502]), the present tax finds no obstacle in the federal origin of the appellant corporation, and we have only to consider whether the law of Wisconsin, as it existed in 1901, authorized it.

Sec. 1034, Stats. 1898, under title XIII, "Taxation," commands that taxes "be levied on all property in this state except such as is exempted therefrom." Confessedly, sec. 1038, Stats. 1898, prescribing exemptions, does not include such property as that now involved. However, in the banking act adopted in 1866 (ch. 102, sec. 1), we find the further provision, "No tax shall hereafter be assessed upon the capital of any bank or banking association organized under the authority of this state," made applicable by sec. 2 to national banks within the state. Here, if anywhere, must be found the exemption claimed by appellant. The question obviously crystallizes into the inquiry whether the capital of a banking as-

sociation, as the word is used in this act, includes the specific property purchased with money contributed as capital.

The words "capital" and "capital stock," often used interchangeably, are found in tax laws to be applied to one or another of three different mental conceptions: first, to the shares or interest which the stockholders have in a corporation; secondly, to the money or property which the incorporators contribute and transfer to the corporation as capital, and which thus becomes its property; and, thirdly, the word is often used as a mere measure of size of the corporation as a test for graduating taxes, usually by way of license. Beyond doubt the word is used in this law in the second sense, for the first is clearly distinguished in the same section by use of the phrase "shares of stock," and the third is obviously not contemplated.

The capital of a corporation is defined as "the funds paid in by the stockholders to be used and managed by the association for banking purposes." *State Bank v. Milwaukee,* 18 Wis. 281, 284. A distinguishing feature is that it becomes the property of the corporation, as differentiated from the component stockholders. It may originally consist of money or specific property, but with banks, as with most other business corporations, money paid in as capital never remains *in specie* for any considerable time. It almost at once becomes converted into some form of property—bonds, securities, or real estate. If, therefore, the exemption of the capital so industriously proclaimed by the law of 1866 was intended to apply only to the specific funds received from the original contributors while retained in the original form, it would be of so slight practical value or importance as to be not worth the effort of enactment. A further consideration, persuasive though not conclusive, is that intent to impose taxation which is double even from an economic viewpoint is not to be ascribed to legislation in absence of clear and unambiguous expression. *People v. Roberts,* 32 App. Div. 113, 52 N. Y. Supp. 859; *Toll-Bridge Co. v. Osborn,* 35 Conn. 7, 20; *Ten-*

*nessee v. Whitworth,* 117 U. S. 129, 137, 6 Sup. Ct. 645.
While it may be conceded that the property of the stockholder
in his shares is so legally distinguishable from that of the cor-
porate entity in its specific assets that the legislature might tax
both without defiance of any definite constitutional inhibition
(*Second Ward S. Bank v. Milwaukee,* 94 Wis. 587, 69 N. W.
359; *State ex rel. Batz v. Lewis,* 118 Wis. 432, 95 N. W.
388), yet, broadly viewed, the value of the stock in the hands
of the shareholders includes the net value of all the prop-
erty which the corporation owns; not only tangible prop-
erty, but also the franchise and any good will from which
results probability of profits. When, as is obviously directed
by the bank act, the shares are assessed at their full market
value, the government exacts taxes upon everything of value
which the corporation owns, and we should naturally expect
to find such reciprocal concession as would relieve the prop-
erty of the bank from a duplication of tax burdens in another
form. Especially so when in the case of other corporations
careful provision against such result is made by wholly ex-
empting the shares when the corporate assets are taxed.
Subd. 9, sec. 1038, Stats. 1898. From these reasons arises
much improbability that the word "capital" is used so re-
strictively as to leave subject to taxation property purchased
with that which the incorporators originally contributed.

The probability to the contrary is, however, rendered almost
a certainty by examination of the conditions and statutes
sought to be modified in 1866. Sec. 20, ch. 71, R. S. 1858,
required that every banking association, not the shareholders,
should pay one and one half per cent. on the amount at par
of its capital stock, and provided that "said capital stock shall
be exempt from all other taxes except on that portion of said
capital stock which shall consist of and include the real prop-
erty." "Capital stock" was there used in the same sense as
"capital," for the shareholders' interest was discriminated
and exempted by another clause. There can, of course, be

no doubt that the expression was there used with intent to include the specific articles of property acquired with the capital, for it was deemed necessary to specify such of that property as it was desired to except from the exemption accorded to capital. Such intent was declared by this court in *State Bank v. Milwaukee,* 18 Wis. 281, where it is said that the exemption was from "local taxation on their property." In this situation came the amendment of 1866, which exempted all the capital, with no exception of that part of it invested in real estate. It is inconceivable that the lawmakers meant the same thing in the latter act as in the former. It is contrary to human experience that in amending an act which exempted "capital except real estate" one should exempt "the capital" with no exception, and mean to continue exactly the same exemption as formerly existed. Reason for increase of the exemption is not wanting. The new law imposed taxes at current rates (generally much in excess of $1\frac{1}{2}$ per cent.) on the full value of the shares of stock itself; also, doubtless, generally in excess of the par value adopted under the earlier law. That full cash value of stock would, as already stated, include the net value of all property which the corporation had, whether acquired with capital, surplus, or deposits, and, in addition, the value of the franchise and good will; hence there was obvious propriety in foregoing attempt to impose tax again on that property *in specie.*

So far as this court has spoken, its utterances tend to confirm exemption of the property of banks acquired with their capital. *State Bank v. Milwaukee, supra,* under the old law, has already been mentioned. In *Second Ward Savings Bank v. Milwaukee,* 94 Wis. 587, 69 N. W. 359, taxability of the plaintiff's real estate was sustained only by holding that it had been acquired with and constituted part of the surplus, apparently conceding that it must be exempt if it represented capital. Again, in *Hamacker v. Commercial Bank,* 95 Wis. 359, 362, 70 N. W. 295, it was said the bank had no personal

property subject to taxation; apparently merely because it had no surplus. In *State ex rel. Batz v. Lewis,* 118 Wis. 432, 95 N. W. 388, the question was not touched; the holding being merely that the shares of capital were taxable to the holders at actual value by clear statutory declaration, whether the realty of the association were taxed or not.

In many other jurisdictions has been declared identity between the capital of a corporation and the specific property into which the money capital had been transformed. The supreme court of the United States has settled for the whole country that an act of Congress exempting United States bonds is disobeyed by a law taxing the capital of a corporation when that capital has become invested in such bonds. *Bank Tax Cases,* 2 Wall. 200; *Van Allen v. Assessors,* 3 Wall. 573; *Nat. Bank v. Comm.* 9 Wall. 353; *Cleveland T. Co. v. Lander,* 184 U. S. 111, 22 Sup. Ct. 394. Other cases of interest are *Tennessee v. Whitworth,* 117 U. S. 129, 6 Sup. Ct. 645; *Railroad Cos. v. Gaines,* 97 U. S. 697, 707; *Lackawanna Co. v. First Nat. Bank,* 94 Pa. St. 221; *Comm'rs v. Citizens' Nat. Bank,* 23 Minn. 280, 288; *Hannibal & St. J. R. Co. v. Shacklett,* 30 Mo. 550; *State, North Ward Nat. Bank v. Newark,* 39 N. J. Law, 380; *State v. St. Paul U. D. Co.* 42 Minn. 142, 43 N. W. 840.

The foregoing considerations constrain us to the conclusion that the legislation in question must be construed as exempting such of the property of a banking association as can be clearly proved to have been acquired with, and to constitute part of, its capital. We appreciate the difficulties that may arise in ascertaining whether given items of personalty or realty have been acquired by investment of the capital as distinguished from the surplus or moneys on deposit; but they are not greater than attend many other questions of fact which are cast upon various tribunals for solution. Doubtless the burden must rest on the association to prove clearly the exempt character of the property, and to show an appro-

priation of the very capital to its purchase, not merely pur-
chase out of its general funds made up of deposits, surplus,
and capital commixed. In the present case, however, there is
no such difficulty, for the real estate in question is shown
without doubt to have been purchased with the original capi-
tal at the very inception· of the plaintiff association. We
therefore conclude that by express statute it was exempt from
taxation for 1901, and that the tax levied was void.

Respondents further urge that, although the tax in ques-
tion be invalid, plaintiff cannot be heard to complain because,
as they assert, the assessors valued the shares of capital stock
which were assessed to the owners thereof for the year 1901
at less than their true value, and in estimating their value
did not include the real estate in question. It is certainly too
late at the present time to try the validity or correctness of an
assessment upon other property to other owners; nor is such
fact at all relevant to plaintiff's contention. It is thoroughly
established that the stockholders, as individuals, are different
entities, for the purposes of taxation, from the corporation
in which they hold stock, and that their stock interest therein
is a wholly distinct property from either the capital owned
by the bank or any other of its property. *Second Ward S.
Bank v. Milwaukee,* 94 Wis. 587, 69 N. W. 359; *State ex rel.
Batz v. Lewis,* 118 Wis. 432, 95 N. W. 388; *Van Allen v.
Assessors,* 3 Wall. 573; *Nat. Bank v. Comm.* 9 Wall. 353.
The plaintiff corporation has a right to·insist that its exempt
property shall not be taxed, whether other property owned by
other people has been sufficiently or insufficiently taxed.

It is still further urged by respondents that, in effect, the
bank itself purchased this certificate, and that this action can-
not be maintained, because it is established that Mark Paine,
who nominally holds it, holds subject to the direction of the
bank, and no decree of a court of equity is necessary to cancel
his rights, and because, in purchasing the certificate, the bank,
in effect, paid its tax voluntarily and cannot now sustain the·

right which Mark Paine, if a *bona fide* owner, would have to demand repayment from the county upon the establishment of the invalidity of the tax. We need not discuss the legal questions thus raised, as we do not find any evidence to sustain the view that the bank, either technically or in effect, was the purchaser of this certificate. It may be conceded that Mark Paine has none but a dry legal title thereto, resulting from its issue to him; but there is no evidence that such title is held for the benefit of the bank. The only proof on the subject is that Mr. Luse, one of the attorneys for the bank, and doubtless acting for its welfare—for the purpose, as he stated, of preventing injury to its credit from the ownership of a tax certificate by persons adverse or antagonistic to the bank,—borrowed from the bank, upon his promissory note, a sum sufficient to buy this certificate, directed his partner, Mr. Powell, to request Mr. Paine to take and hold the certificate subject to his directions, and it was so purchased. If Mr. Paine holds in trust for any one, apparently Mr. Luse is the person. Now, there was not a word of evidence that there was any agreement by the bank with Mr. Luse to surrender up his note upon the turning over of the certificate to it, nor any agreement on the part of Mr. Luse to so turn it over. An agreement on his part to purchase the certificate with his own money, and to hold it subject to the future desire of the bank to acquire it in case it should be adjudged valid, contains nothing of illegality. There is no question of fraud involved at all. If the certificate is void, the county is not entitled to the money upon it, and no injury or fraud could be done to the county by an arrangement of that sort; hence whatever arrangement the parties saw fit to make was beyond assault or question by the county. Not even is the county affected by those considerations which warrant the refusal to allow the recovery back of voluntarily paid taxes; for, when that occurs, the municipality has a right to assume that the money is paid finally, and to proceed to expend the

same for its municipal purposes; and serious injury and embarrassment might well result from its being afterward required to pay it back. For these reasons we conclude, as above stated, that it is not established that the bank is the owner of this certificate or has a right to acquire it without paying for it.

The property being exempt, the tax laid upon it, as also the tax certificate, is void, and plaintiff has a right to judgment to that effect. Also, as against the county, Mark Paine has right to return of the money paid for the certificate by virtue of his legal title thereto. Whether by reason of some trust he may be accountable to Mr. Luse for that money, is wholly immaterial.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment in accordance with the prayer of the complaint.