THE STATE OF DELAWARE *vs.* R. H. PERRY & Co., a corporation of the State of Delaware.

(*February* 3, 1928.)

PENNEWILL, C. J., RICE and HARRINGTON, J. J., sitting.

*Charles C. Keedy*, Special Deputy Attorney General, for the State.

*Howard Duane* (of Marvel, Layton & Morford) for defendant.

Superior Court for New Castle County, No. 96, November Term, 1927.

HARRINGTON, J., delivering the opinion of the Court:

The defendant company was created under the Corporation Laws of this State. The question is whether it was subject to assessment and taxation for the year 1926 on an authorized issue of 100,000 or on 150,000 shares of stock.

It appears from the agreed statement of facts that its charter authorized it to issue 50,000 shares of Class A, no par value, stock, having certain preferential privileges and 100,000 shares of common stock, also having no par value.

The charter further provided, however, that the holders of Class A stock should have the right, at any time, at their option, to convert such stock into common stock, in which event the Class A stock, so converted, should be finally canceled and could never be reissued.

It also provided that a sufficient amount of common stock should be retained in the treasury of the defendant company to secure the conversion privileges incident to its Class A stock.

The answer to the question presented depends upon the construction of *sections* 68 and 69 of the Franchise Tax Act of this State, as amended by 35 Del. *Laws, c.* 5, § 4.

*Section* 68 provides:

"All corporations, incorporated under the laws of this State, after the tenth day of March, A. D. 1899, shall pay an annual license fee or franchise tax to the State School Tax Department, as follows: Where the amount of the authorized capital stock does not exceed 250 shares $5.00   *   *   *   where the authorized capital stock exceeds 5,000 shares, but is not more than $10,000 shares $50;  and the further sum of $25.00 per year on each 10,000 shares, or part thereof, in excess of 10,000 shares."

*Section* 69 as amended provides:

"The Secretary of State shall certify and report to the State School Tax Department on or before the first day of April in each year, a statement of the basis of the annual license fee or franchise tax determined from the annual report filed by each corporation as hereinbefore required, and the amount of tax due thereon respectively at the rate fixed by *section* 68 and 68A of this chapter; such tax shall thereafter become due and payable.   *   *   *   "

As *section* 68 provides for the payment of a license fee or franchise tax on the "authorized capital stock" of all corporations organized under the laws of this State, the solution of the question before us depends upon the meaning of those words as used in that section of the statute.

The State contends that as the statute provides for a license fee or franchise tax it is based on the corporate rights or privileges granted by the state to the defendant corporation; that such rights and privileges not only include its right to conduct its business, but, also, the right, on the request of the holder, to cancel its Class A stock, and to issue common stock in exchange therefor, and that if the conversion privilege above referred to should be exercised, the defendant corporation would have legally issued, though at different times, a total amount of 150,000 shares of stock and should, therefore, be taxed thereon.

Whatever the annual sums to be assessed against the corporation may, by the statute, in terms be called, as we view it ·the amount so assessed necessarily depends upon the authorized capital of the corporation; that is, on the amount of money that the corporation is authorized to raise by the sale of its stock for use in its business operations.

Under its charter it is conceded that the defendant corporation can at no time have outstanding more than 100,000 shares of stock. Whether, therefore, such stock shall consist of 50,000 shares of Class A and 50,000 shares of common stock, or of 100,000 shares of common stock alone, will not affect either the treasury of the corporation or the capital that can be raised and used by it in its business enterprises.

While it involved the right of the State to tax an issue of stock that had been authorized by the charter of the corporation, but which, pursuant to charter authority, had been redeemed and could not be reissued, an argument somewhat similar to that of the State in this case seems to have been made in *Superior Steel Corp. v. Com. of Virginia*, 147 *Va.* 202, 136 *S. E.* 666. In that case the court, in construing a very similar statute aptly said:

"The statute requires the commission to 'ascertain the amount of the authorized maximum capital stock of such corporation, * * * as of the first day of January in each year.' This language can only mean the maximum capital stock which the company has the authority, or legal power, to issue. It is conceded that the preferred stock is all redeemed and canceled, and that the corporation has no power to reissue it in any form. This * * * leaves the corporation with an authorized maximum capital stock of only $11,500,000. Besides, the franchise tax is conceded to be a privilege tax. The amount of stock actually issued and outstanding is of no concern in arriving at the basis of the tax. The only question is what is the maximum capital stock which the corporation has the power, under the law, to issue. It is clear that the Legislature never intended * * * to levy a privilege tax on a corporation for the privilege of doing something which, if done, would be a violation of its charter and the law."

It is true that the meaning of the words "authorized capital stock" often depends upon the context of the statute or other instrument in which they appear, and they may, therefore, be used in different cases to express different meanings. *Armstrong v. Emmerson*, 300 *Ill.* 54, 132 *N. E.* 768, 18 *A. L. R.* 693; *Goodnow v. Amer., etc., Paper Co.*, 73 *N. J. Eq.* 692, 69 *A.* 1014; *First Natl. Bank v. Douglas Co.*, 124 *Wis.* 15, 102 *N. W.* 315, 4 *Ann. Cas.* 34; *People v. Feitner*, 92 *App. Div.* 518, 87 *N. Y. S.* 304; *Person & Riegel Co. v. Lipps*, 219 *Pa.* 99, 67 *A.* 1081; *Markle v. Burgess*, 176 *Ind.* 25, 95 *N. E.* 308; *Tapscrott v. Mex. Col. River Land Co.*, 153 *Cal.* 664, 96 *P.* 271.

In this particular case, there certainly is nothing in the statute to clearly indicate that they should be given the meaning contended for by the State, and it must be conceded that if there is any doubt about the meaning of the words used in a tax statute, such doubt must operate against the State and in favor of the taxable. *U. S. v. Merriam*, 263 *U. S.* 179, 44 *S. Ct.* 69, 68 *L. Ed.* 240, 29 *A. L. R.* 1547; *Gould v. Gould*, 245 *U. S.* 151, 38 *S. Ct.* 53, 62 *L. Ed.* 211; *Parlington v. Atty. Gen. L. R.*, 4 *H. L. Cas.* 100, 122.

Under the statute in question, our conclusion, therefore, is that the defendant corporation was only assessable on an authorized issue of 100,000 shares of stock.

The State further contends, however, that the assessment against the defendant corporation in this particular case is binding on the corporation, because the report filed by it in the office of the Secretary of State in January of 1927 stated that it was authorized

to issue 150,000 shares of stock, and that the assessment made by the Secretary of State, pursuant to the provisions of *section* 69 of the Franchise Tax Act, was based thereon.

This is an action of debt for a collection of a tax assessed against the defendant corporation, and this contention raises the question whether the report, upon which the assessment was based, is absolutely binding on the corporation, or whether it can be shown in defense to this action that certain statements in such report, which materially affected the amount of the assessment, were based on an erroneous construction of the statute and were, therefore, incorrect.

*Section* 66 of the same statute, as amended by volume 35, *Laws of Delaware, chapter* 5, *page* 12, amongst other things provides: That every corporation organized under the laws of this State shall file an annual report in the office of the Secretary of State, setting forth the amount and the number of shares of each class of its authorized capital and the number of shares of each class actually issued.

*Section* 67 of this statute, also, provides that if any such corporation shall neglect or refuse to make such return, within the prescribed time, that the Secretary of State shall ascertain and assess the amount of the annual license fee or franchise tax, and the basis upon which the same is determined in such manner as may be deemed by him most practical.

*Section* 69 further provides that the Secretary of State shall have the power to inquire into the truth or falsity of the statements in every corporate charter filed, and to that end may require the production of the corporate books and may examine witnesses.

This Court has already held, and, by reason of the statutory provision above referred to, we think necessarily so, that the Secretary of State in making his assessment is not bound by the statements set forth in the report filed. *State of Del. v. Coppermines Co.*, 2 *Boyce* 400, 80 *A.* 145.

*Section* 82 of the act also provides for an appeal to the Governor if the corporation shall consider the tax assessed by the Sec-

retary of State excessive, or otherwise unjust, provided said appeal shall be filed within a stipulated time.

It further provides that:

"If, in the opinion of the Governor, it shall appear that the tax so levied, as aforesaid, is excessive or unjust, he shall thereupon require the officers of the corporation to file with him a corrected return, and upon said corrected return the assessment shall be adjusted and the tax reduced or amended, as, in the opinion of the Governor shall seem proper."

It also provides that if the "appeal shall not be filed within three months from the date of the assessment * * * the right to appeal to the Governor shall be considered and treated as having been waived and the amount of tax levied shall be payable and collectible at once."

It is true that *section* 69 provides that the tax shall be "determined from the annual report filed," but it is apparent from other sections of the same statute that such report is not, under all circumstances, binding on either the Secretary of State or the corporation.

While it does not appear from the agreed statement of facts, it was conceded at the argument of this case that the defendant appealed, under *section* 82, from the assessment made by the Secretary of State.

It was also conceded that the Governor refused to direct the filing of a corrected return, but the defendant corporation clearly has not waived any of its rights with respect thereto. As no fact, requiring the application of the law of estoppel appears, we see no reason why the errors in the report of the corporation to the Secretary of State cannot be shown like any other defense to the amount claimed to be due. From what we have already said, it is apparent that the defendant corporation was subject to an assessment on an authorized capital of 100,000 shares and not on 150,000 shares, as was erroneously stated in its report to the Secretary of State, and pursuant to the provisions of the case stated judgment must, therefore, be entered in favor of the State of Delaware and against the defendant corporation for $275.00, with interest at one per centum (1%) per month from July 1st, 1927, but without costs of suit.