FITCH and another, Respondents, vs. WISCONSIN TAX COMMISSION and others, Appellants.

*March 6—April 1, 1930.*

For the appellants there was a brief by the *Attorney General* and *A. L. Hougen* of Manitowoc, special counsel, attorneys for the Tax Commission, and *George A. Bowman,* district attorney for Milwaukee county, and *Robert R. Freeman,* special counsel, attorneys for John H. Leenhouts, assessor of incomes, and oral argument by *Mr. Hougen.*

For the respondents there was a brief by *Douglass Van Dyke,* attorney, and *Miller, Mack & Fairchild,* of counsel, and oral argument by *Mr. Van Dyke* and *Mr. Frederic Sammond,* all of Milwaukee.

OWEN, J.   On November 8, 1928, the executors of the will of Martha E. Fitch, desiring to close the estate and secure their discharge as such executors, applied to the assessor of incomes of Milwaukee county for a determination of the amount of the income tax due from the estate on the income of the estate for the year 1928.   This application was made under the provisions of sec. 71.095 (6) of the Statutes, which makes it the duty of the income tax assessor, when an executor or an administrator desires to close the estate, to compute in advance the amount of the income tax assessable against said estate.   The assessor assessed not only an income tax that was normally due and payable in 1929, but assessed a mythical or assumed income tax for the years 1929 and 1930.   To ascertain the income tax for the year 1928, normally due and payable in the year 1929, he took as a basis the average income for the years 1926, 1927, and 1928.   The tax thus ascertained was voluntarily paid.   For the tax of 1929 he took as a basis the income reported for the years 1927 and 1928, with zero for the 1929 income, and based the tax upon the average of such incomes.   For the year 1930 he took as a basis the income for the year 1928 and zero for 1929 and 1930, and based a tax upon the average income for those three years thus ascertained.   It is the mythical tax imposed for the years 1929 and 1930 for which the refund is claimed.

The effect of this computation is to impose an income tax for the years 1929 and 1930 upon a deceased person and/or upon an estate that has been distributed and has no existence.   This is a practice out of harmony with well settled notions concerning the right of the state to impose, or the duty of the taxpayer to pay, a tax.

In the very opening sentence of Cooley on Taxation (3d ed.) we find it stated that "Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs. The state demands and receives them from the subjects of taxation within its jurisdiction that it may be enabled to carry into effect its mandates and perform its manifold functions, and the citizen pays from his property the portion demanded, in order that, by means thereof, he may be secured in the enjoyment of the benefits of organized society. The justification of the demand is therefore found in the reciprocal duties of protection and support between the state and those who are subject to its authority, and the exclusive sovereignty and jurisdiction of the state over all persons and property within its limits for governmental purposes."

The exaction of a tax can only be justified from one who is enjoying the protection of government either for himself or for his property. A deceased person enjoys none of the protections or benefits of government, and a tax imposed upon him or his personal representatives does not find a consideration in his personal protection. So long as his estate remains an entity, however, it enjoys the protection of government for which it may properly be taxed. When, however, the estate is dissipated upon final order of distribution, the theory upon which the state may thereafter continue to exact a tax is not readily perceived. To say the least, it is an extraordinary use of the taxing power, and the purpose of the state to exact such tax should plainly appear. It should not result from construction of equivocal statutory provisions. *First Nat. Bank v. Douglas County,* 124 Wis. 15, 102 N. W. 315.

Prior to the enactment of ch. 539, Laws of 1927, a tax was imposed upon specific annual income. The income was earned in one year, the return thereof was made and the tax assessed the next year, and the taxes became collectible

the year following. By the enactment of ch. 539, Laws of 1927, it was provided that the basis of the tax should be the average net income for three years, namely, the year in which the income reported was earned and the income earned in the two preceding years. Sec. 71.10 (1) (a), Stats. It seems that the practice of the Tax Commission in exacting mythical taxes for the years subsequent to the distribution of an estate did not arise until after the change of method in arriving at the basis of the tax by the passage of ch. 539, Laws of 1927. This seems to be based upon the assumption that only one third of the income for the current year is taxed for that year. This is certainly erroneous. The change of the basis of the income tax assessment from the net income of a specific year to the average income of three years worked no such result. Under the average theory, the basis for an income tax for a three-year period is exactly equal to the basis of the income tax for the same period on the specific annual income basis. This is especially true as to the taxpayer who had paid his taxes on the specific annual income basis prior to the enactment of the change in 1927. This will readily appear if we consider the tax paid upon a uniform income of $15,000 for the years 1920 to 1930. As to such an income, no change was wrought by the law of 1927. The basis of the tax for each and every year was $15,000, and upon a payment of the last income tax every dollar of income which the state subjected to the tax had contributed everything to the support of government which had been demanded of it.

The change from specific annual income to average income resulted in a more uniform assessment where the income was fluctuating in its nature. Because of this, it also resulted in some degree in a difference in the rates of the tax, but no income escaped taxation, except perhaps the income of 1926, which the legislature itself provided in plain terms should not be assessed. Although the assessment of 1926 income was

skipped, no income tax was lost thereby. The taxpayer still paid an income tax during every fiscal year. This was accomplished by requiring the income tax assessed for a given year to be paid on June 1st of the year following its receipt instead of December of the following year, or January of the year following that. We apprehend that it will be difficult for taxpayers to believe that they have escaped income taxes by reason of the change from the specific annual to the three-years-average basis. We think it is demonstrated that they have not, and that there is no more reason now to project an income tax into the years succeeding the closing of an estate than there was before the change.

The Tax Commission apparently places additional reliance upon the provisions of sec. 71.10 (1) (c), which provides, "If any years, prior to the first year or subsequent to the last year in which any person received income taxable under the statutes, must be used in deriving an average taxable income for income tax purposes, it shall be considered that there was no net income or loss for any of such prior or subsequent years." This does not indicate that an income tax is to be assessed against the taxpayer after he or she is dead and his or her estate is distributed. It does not pretend to designate the year in which an income tax shall be assessed. It simply directs the amounts that shall enter into the average where there was no income during one or more years, which the statute directs shall be taken into consideration in determining the average upon which an income tax for any given year is assessed. For such years the amount is zero. Such zero years will always precede the year for which the tax is assessed, although they may be either prior or subsequent to the year in which the income is earned. As a substantive provision it is of little consequence. It does little if any more than to express what was necessarily implied from the mandate of sec. 71.10 (1) (a) that the net

income or loss reported by the taxpayer on his current return should be averaged with the net incomes or losses for the two previous years. Of course if there was no income or loss for such previous years, or either of them, then it would seem apparent that zero should be used for such years in determining the average income.

A situation is conceivable that lends plausibility to the position of the Tax Commission, considered from the standpoint of justice. Hereafter a taxpayer will pay an income tax upon only one third of his first year's income. The next year he will pay a tax upon two thirds of his combined income for the two years. During the third year and thereafter he will pay a tax on his full average income. A tax on every penny of a new taxpayer's income during his natural life would require an assessment projected two years beyond his death, as was done in accordance with the Tax Commission's present practice. However, there is no provision of the statute either directing or requiring the assessment of such projected income. If the legislature had intended any such refinement in the administration of the law, it should have so provided. It is to be noted, however, that while such a provision would have reached all of the income of those becoming income taxpayers after 1927, it would have imposed an additional and unjust tax upon those who were taxpayers before 1927. It is not to be presumed that the legislature had any such niceties in mind. It is rather to be presumed that the legislature fully understood that under the three-years-average system a new taxpayer would not be paying on his full income until the third year, and that it deliberately waived the tax thus lost in order to institute a system which it deemed preferable to the one supplanted.

Furthermore, the statute does not subject every penny of income to an income tax. If it be necessary to classify the income tax with one of the recognized classifications of taxes, it is probably an excise tax. However, in popular

understanding it is a personal tax, measured by one's ability to pay. This is also the economic view. It is an annual tax. The income of the taxpayer is made a basis for measuring the amount which the taxpayer is able to pay. In arriving at this amount the legislature takes the gross income of the taxpayer and treats it as it sees fit. The law has always allowed exemptions and deductions. These are arbitrary and according to the legislative will. While formerly the specific income for a given year was made the basis for determining the amount which the taxpayer was able to pay, the legislature has now made the average income for three years the basis for the state's annual imposition upon the taxpayer. The law does not now and never did subject every penny of income to a tax. The only income which it now subjects to a tax is the "average net income as hereinafter provided." Sec. 71.01. The tax, however, is an annual tax. The amount of that annual tax is determined in the manner provided by the statute. There must come a time when this annual tax shall cease. Manifestly that time has arrived when the taxpayer is dead and his or her estate is distributed. There can be no annual tax imposed during the years following the distribution of the estate. The last annual tax that may be imposed upon such taxpayer or his or her estate is for the year during which the estate is distributed. The tax then imposed is to be determined in accordance with the rule provided by the statutes, which is the same rule provided for the assessment during any other year. That requires averaging the income received during that year with the income received during the two preceding years. When that amount is thus determined it fixes the final amount of income tax for which the estate is liable.

It seems clear that the tax complained of was unlawful and unjustly imposed, and that the judgment of the court ordering the refund should be affirmed.

*By the Court.*—Judgment affirmed.