ANN HANEY, Commissioner Office of the Commissioner of Insurance
Your predecessor asked a series of questions concerning the tax offset provision of section 646.51 (7), Stats., and the retaliatory/reciprocal provisions of sections 76.66 and 76.67, Stats. These questions were prompted by the liquidation of Reliable Life and Casualty Company, Inc. (herein Reliable), a domestic insurance corporation.
The Commissioner of Insurance of the State of Wisconsin was appointed liquidator of Reliable on October 7, 1981. She was directed "forthwith to take possession of the assets of the insurer and *Page 18 
to administer them under the orders of the court." Sec. 645.42
(1), Stats. The liquidator has extensive powers and responsibilities as detailed in section 645.46; specifically, under section 645.46 (8), she must "[c]ooperate with the fund created under ch. 646 in using assets of the estate to transfer policy obligations to a solid assuming insurer, if the transfer can be arranged without prejudice to applicable priorities under s. 645.68."
The fund referred to in section 645.46 (8) is the Insurance Security Fund (herein the Fund). Generally, the Fund provides a source of funds for the payment of claims during liquidation under section 646.31 and the continuation of policies under section 646.35.
In your predecessor's report to the Governor for 1981, she noted that 125,000 policyholders of Reliable are currently provided continued insurance coverage by the Fund. Administration is provided under a contract with Mutual of Omaha. 1981 Wisconsin Insurance Report at 5, 59.
In December, 1981, the Fund levied seven million dollars of assessments for twenty-two states against 384 domestic and nondomestic insurers writing accident and health insurance in Wisconsin. Each assessed company may be entitled to a tax credit in each of the five years following the year of payment "[i]f the premium rates on a class of business are fixed, so that it is not possible for the insurer to recoup its assessments by increasing premium rates on the class of business . . . ." Sec. 646.51 (7), Stats. Recoupment through premium increases is preferred. Since the Legislature recognized the possibility that the Fund could "operate all or a portion of the outstanding business of a defunct insurer until it runs off the books," committee comment, chapter 109, paragraph 4, Laws of 1979, the assessments and tax credits could extend over years, even decades.
The first question asks:
 Does Section 646.51 (7), Wisconsin Statutes . . . apply to taxes levied on affected domestic and/or non-domestic insurers under Subchapter III, Chapter 76; s. 71.01 . . . or s. 601.93, Wisconsin Statutes? *Page 19 
Section 646.51 (7) provides in part:
 If the premium rates on a class of business are fixed, so that it is not possible for the insurer to recoup its assessments by increasing premium rates on the class of business, the insurer may offset 20% of the amount of the assessment against its tax liabilities to this state, other than real property taxes, in each of the 5 calendar years following the year in which the assessment was paid.
The word "liability" generally means "debt." "Taxes," however, invites a more precise definition.
The supreme court adopted a definition from Cooley on Taxation
(3rd ed.) in Fitch v. Wisconsin Tax Comm., 201 Wis. 383, 387,230 N.W. 37 (1930): "In the very opening sentence of Cooley on Taxation (3d ed.) we find it stated that `Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs.'"
This definition was restated in DePere v. Public Service Comm.,266 Wis. 319, 63 N.W.2d 764 (1954), and more recently in State exrel. Bldg. Owners v. Adamany, 64 Wis.2d 280, 219 N.W.2d 274
(1974).
Not all funds collected by the state are taxes; the state also collects fees. Our supreme court explained the distinction inState v. Jackman, 60 Wis.2d 700, 707, 211 N.W.2d 480 (1973): "A tax is one whose primary purpose is to obtain revenue, while a license fee is one made primarily for regulation and whatever fee is provided is to cover the cost and the expense of supervision or regulation." An insurer pays both taxes and fees to the state. Only those liabilities which represent taxes, as defined, are subject to an offset or tax credit under section 646.51 (7).
I conclude that a domestic insurer is taxed only under the provisions of section 71.01 (2) (franchise tax on corporations) and section 601.93 (fire department dues).[1] A non-domestic (or foreign) insurer is taxed only under the provisions of subchapter III of chapter 76 (taxation of insurers) and section601.93. All other payments made by any insurer are not taxes and are therefore not subject to an offset *Page 20 
or credit. Included in this latter category are the fees payable under sections 601.31, 601.32, 601.45 and 601.47, which fund the Insurance Commissioner's supervision of the insurance industry.
The second question asks:
 [W]hat is the meaning of the phrase "premium rates on a class of business [that] are fixed" in s. 646.51
(7), Wisconsin Statutes . . .? More specifically, the two key terms are "fixed" and "class of business." If a contract permits increased rates does that, de facto, mean that the rates are not fixed or are there other factors that should be used to define the term "fixed." With regard to "class of business," does this section mean that the entire "class of business" on which the assessment is based must have fixed premium rates or merely that some portion of that "class of business" must have fixed premium rates?
There are two key terms in the phrase in question, "fixed" and "class of business." "All words and phrases shall be construed according to common and approved usage . . . ." Sec. 990.01 (1), Stats. "Common and approved usage of words in a statute may be established by definitions contained in a recognized dictionary."Kollasch v. Adamany, 104 Wis.2d 552, 563, 313 N.W.2d 47 (1981);In re Estate of Haese, 80 Wis.2d 285, 259 N.W.2d 54 (1977).
"Fixed" is defined in Webster's Third New InternationalDictionary 861 (1976) as "c (1): not subject to change or fluctuation: ABSOLUTE, SETTLED, DEFINITE." Therefore, the statute refers to those premiums which are not subject to change. Since insurance is founded on a contract between insurer and insured or may be subject to rate legislation, it follows that the fixed character of a premium is due to the contract of insurance or legislation and not to other factors. Section 646.51 (7) adopts this definition by declaring that a fixed premium rate is one that is not possible to raise.
The word "fixed" also appears in section 646.51 (5). The use of one definition for this subsection and a second definition for section 646.51 (7) would produce an unreasonable result.
"Class" is defined in Websters Third New InternationalDictionary 416 (1976) as "3: a group, set, or kind marked by common attributes or a common attribute . . . ." Therefore, a class of business *Page 21 
would be those items of business sharing a common attribute. Chapter 646 applies to "[a]ll kinds and lines of direct insurance, except variable annuities and variable value life insurance contracts." Sec. 646.01 (1)(a)1., Stats. "Business" must be equated with direct insurance and "class of business" therefore corresponds to "kinds of insurance."
The Legislature defined four groups of insurance in section646.11 (2) — life insurance, disability insurance, annuities and all other insurance subject to chapter 646. Implicit in section 646.51 (7) is legislative recognition of two broader classes — insurance whose premium rates can or cannot be raised. Therefore, there are at a minimum eight classes of insurance. I conclude there are four main of business (as listed in section 646.11 (2)), each of which is divided into two sub-classes — fixed rate or non-fixed rate. It is possible that a main class would have only one subclass, in which case the class and the subclass are coequal.
The third question asks:
 Is the amount of the assessment that may be applied against tax liabilities in Wisconsin by an insurer . . . derived from its total assessment or only from that portion of the assessment that relates to business in Wisconsin . . .? Is the amount that may be applied derived only from that portion of the assessment . . . attributable to classes of business with fixed rates?
An insurer's Wisconsin assessment is based on business done (i.e., premiums earned) in Wisconsin, not on its total business. Therefore, the assessment due to Wisconsin business is the assessment that will be used in calculating the tax offset.
If the assessment is needed for the payment of insurance claims under section 646.31 (2) for continuation costs under section646.35 (3) or for the payment of expenses of administration of the fund in connection with a liquidation, the method of calculation is straightforward: multiply the amount of "premiums written in this state in the classes protected by the account, as reported in the most recent annual statement of each insurer," section 646.51 (3)(a), by a percentage which, pursuant to section646.51 (4), cannot exceed two percent. It is clear that only Wisconsin premiums are used. *Page 22 
If the assessment was for the payment of expenses incurred in providing continuation of coverage under section 646.35 (2), the method of calculation becomes more complex. First, the Board of Directors of the Fund determined that Reliable was authorized to transact business in twenty-two states. Then the Board of Directors divided the premium amounts received by Reliable on business in each of those twenty-two states by the aggregate premiums Reliable received in all twenty-two states to determine the percentage of the total assessment attributable to each state. This results in a separate assessment for each of the twenty-two states. Each separate state assessment is then pro-rated among those assessed insurers doing business in such state on the basis of premiums earned by each company divided by the total premiums earned by all assessable insurers in such state.
Insurers subject to chapter 646 are taxed on the basis of how much business is done within Wisconsin. See sec. 71.02, Stats., and subch. III of ch. 76, Stats. The assessments are calculated on a state-by-state basis. It is clear to me, therefore, that the Legislature intended that any tax credit granted by Wisconsin extend only to Wisconsin tax liabilities. The intent is manifested by the use of the singular and plural form of the word "assessment" in section 646.51 (7).
 If the premium rates on a class of business are fixed, so that it is not possible for the insurer to recoup its assessments by increasing premium rates on the class of business, the insurer may offset 20% of the amount of the assessment against its tax liabilities to this state.
If the Legislature had intended all assessments to be offsets, the second "assessment" would be plural. To hold otherwise would be to allow the people of Wisconsin to subsidize expenses incurred outside of Wisconsin without furnishing any benefits for the citizens of Wisconsin.
Since the Legislature clearly intended that each class of business be subdivided in two subclasses according to the nature of the premiums, it follows that the assessment attributable to each assessed insurer in each state must be similarly subdivided. In fact, this subdivision occurs prior to the first step in the arithmetic involved under section 646.51 (3). Since offsets exist only when the policy premiums *Page 23 
cannot be raised to provide recoupment, it follows that the offsets under section 646.51 (7) are based on fixed-rate policies. Therefore, the amount of assessment to be applied as an offset is attributable to fixed rate business only.
The fourth question asks:
 [Whether the] provisions of s. 76.66 and 76.67, Wisconsin Statutes [the retaliatory/reciprocal taxation clauses are] applicable to the assessment offset provisions of other states?
Presently, all fifty states and the District of Columbia have guarantee funds for property and casualty companies. However, only fifteen allow assessments to be offset against premium taxes. Thirty states have guarantee funds for life and health companies. Twenty states and the District of Columbia do not. of those thirty states, twenty-two allow an offset for assessments against taxes. No state other than Wisconsin requires that premiums must be fixed before an offset is allowed. The other states that allow offsets do so unconditionally.
The consequences of section 76.66 (the retaliatory taxing provision) were explained in Kansas City Life Ins. Co. v. State,265 Wis. 414, 415, 61 N.W.2d 816 (1953):
 Sec. 76.35 [renumbered 76.66 by ch. 102, sec. 26, Laws of 1979] of the Wisconsin statutes is a retaliatory statute, providing that whenever the laws of any other state impose greater taxes, fines, penalties, license fees, or other payments upon life insurance companies organized in Wisconsin for a license to do business there than are imposed by the laws of Wisconsin upon foreign life insurance companies doing business in this state, then the same taxes, fines, penalties, license fees, and other payments imposed by the other state upon Wisconsin corporations shall be imposed by Wisconsin upon corporations of such other state doing business here.
Conversely, section 76.67, the reciprocal statute, allows lower taxes, fines, penalties, license fees or other payments if another state imposes lower payments than Wisconsin imposes on insurers from said state.
Both sections 76.66 and 76.67 specifically refer to taxes. Clearly, both sections would apply to taxes levied under section71.02 *Page 24 
(franchise tax on domestic insurers) and subchapter III of chapter 76 (premium taxes). Since section 646.51 (7) impacts on tax liabilities, it therefore follows that the provisions of sections 76.66 and 76.67 must extend to section 646.51 (7). Specifically, it is the action of the retaliatory statute, section 76.66, that compels this answer.
The retaliatory tax provision is not designed as a revenue measure; rather, it is founded on principles of comity, designed to create substantially equal burdens on domestic and nondomestic insurers. These clauses seem to be most frequently litigated in California. A typical holding contains the following statement of purpose quoted by the United States Supreme Court in Western Southern L. I. Co. v. Bd. of Equalization, 451 U.S. 648, 673
(1981):
 "The common purpose of [retaliatory tax] legislation in the several states has been to discourage any state from imposing discriminatory taxes or other burdens upon out-of-state companies. The effort seems to have been very largely successful; in any event taxes on insurance premiums have stayed close to 2 percent in most states, for both domestic and out-of-state insurers." Atlantic Ins. Co. v. State Board of Equalization, 225 Cal. App. 2d, at 4, 62 Cal.Rptr., 786.
Since section 646.51 (7) directly affects "tax liabilities," it must be considered when applying section 76.66 to determine the taxes a nondomestic insurer will pay. Likewise, a similar provision in the law of another state must be considered in the application of sections 76.66 and 76.67.
The fifth question asks whether Wisconsin is required to:
 [G]rant an offset of premium taxes and/or fire dues to companies domiciled in states which . . . grant an offset to Wisconsin domiciled companies . . .? If so, must the "terms and conditions" of that offset be the same as those of the "offset-granting" state?
My answer to both questions is yes, provided both states must have made an assessment or have the potential to make assessments.
Presently, twenty states and the District of Columbia do not have guarantee fund provisions. In those states, an insurer in liquidation would not trigger assessments or tax offsets. *Page 25 
Thirty states now have guarantee funds for life and health insurance companies. of those thirty states, twenty-two have tax-offset provisions. Therefore, a straightforward application of section 76.66 would provide the answer for comparisons between any two of the twenty-two states allowing offsets. The remaining situation would involve one of the twenty-two states having tax offset provisions and one of the eight states without such provisions.
A case substantially similar to this last situation isFranklin Life Ins. Co. v. State Board of Equalization45 Cal. Rptr. 869, 404 P.2d 477 (1965).
Franklin was an Illinois corporation doing business in California. California law required a tax of 2.35% of gross premiums less return premiums received in such year by an insurer upon business done in California. California allowed a deduction for property taxes from the premium tax. Illinois did not. As a result, the Illinois tax on a California insurer was higher than California's tax on equivalent business done by the Illinois insurer in California. As a result, Franklin paid the higher tax to California.
Applying the Franklin holding to the last situation, we find that Wisconsin would not allow a tax offset to a company domiciled in one of the eight states not allowing offsets but having a guarantee fund and assessments.
Must the "terms and conditions" of the offset granted by Wisconsin be the same as those offered by the other state? "Terms and conditions" are immaterial; the amount of the offset is material. Again, this answer presumes we are comparing two of the twenty-two states allowing both assessments and offsets. The tax is computed twice, once in the actual tax assessing state, and again hypothetically, assuming a reversal of position. Then, either section 76.66 or 76.67 controls, depending on which calculation produced the higher tax.
The sixth question assumes the application of section 76.66 and another state which does not grant offsets for assessments:
 [I]s Wisconsin [then] prohibited from granting an offset to insurers domiciled in that `non-offset-granting' state?
The answer is yes. This results from the application of the retaliatory provision, section 76.66. It also results from the holding in Franklin. However, please note that I assume both states can assess. *Page 26 
The seventh question asks:
 Is the legal amount that an insurer, domestic and/or non-domestic, may offset in Wisconsin limited by any factors other than the 20% per year for five years limitation? For example, tax liability offset provisions of other states may result in a situation where an insurer has recouped some or all of its assessment in a year. In such a case, in the insurer's offset of tax liability in Wisconsin limited in any way by the amount of the assessment offset in other states?
One limitation imposed by chapter 646 is the twenty percent/five year limitation in section 646.51 (7). Since the assessment is imposed on a state-by-state basis and since the offset is based only on the state assessment, in Wisconsin's case a company could not get an excess offset.[2] However, if other states allow offsets on assessments based on more than one state's assessment, it is possible that a Wisconsin domiciled insurer could recoup more than 100% of its assessment. There is no prohibition against this. If a limitation is desired or becomes necessary, then the matter is one properly before the Legislature. A second limitation limits the offset to actual tax liability by disallowing any carry-forward or refunds. Sec.646.51 (7), Stats.
The last question asks:
 If legal action by the liquidator results in collection of damages in amounts sufficient to reimburse assessed insurers for some or all of the assessments paid, how will such reimbursements be treated for tax purposes if tax liability offsets have been claimed and granted?
Assessments are offset dollar for dollar against taxes, and therefore constitute a credit.
"Credit" is defined in Blacks Law Dictionary 331 (5th ed. 1979): "In taxation, an amount which may be subtracted from the computed tax itself in contrast to a deduction which is generally subtracted from gross income to arrive at adjusted gross income or taxable income." *Page 27 
Therefore, reimbursement of an assessment used as an offset calls for an addition to the computed tax, i.e., recapture of the credit.
BCL:DJS
[1] Or a domestic life insurance company under section 76.65
(1).
[2] However, the effects of sections 76.66 and 76.67 should not be overlooked.